**Norman A. JOHNSON, Petitioner–Appellant,**

v.

**John ASHCROFT, U.S. Attorney General; Immigration and Naturalization Service, Respondents–Appellees.**

**Docket No. 03–2071.**

United States Court of Appeals, Second Circuit.

Calendared: June 23, 2004.

Decided: Aug. 5, 2004.

Perry S. Reich, Schapiro & Reich, New York, NY, for Petitioner–Appellant.

Margaret M. Kolbe, Assistant United States Attorney for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York (Varuni Nelson, Ste-

ven J. Kim, Assistant United States Attorneys, on the brief), Brooklyn, NY, for Respondents–Appellees.

Before MINER, CALABRESI, and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge.

This case raises the question of whether the Immigration and Naturalization Service ("the INS" or "the Service")[1] may—on the basis of information that was available to the Service at the time of an alien's original proceedings, and subsequent to the entry of a final order of removal—successfully move to remand a case to the Immigration Judge ("IJ") in order to lodge additional grounds for removability. The Petitioner appeals from the judgment of the district court (Raggi, *J.*) denying his petition for a writ of habeas corpus. We conclude that the Board of Immigration Appeals ("the BIA" or "the Board") acted contrary to its own precedents when, in the absence of any previously unavailable evidence, it granted the Service's motion to remand Petitioner's removal proceedings. We therefore reverse the judgment of the district court and remand the case to that court with instructions to grant the petition.

## I. BACKGROUND

Petitioner Norman A. Johnson ("Petitioner" or "Johnson"), a citizen of Jamaica, entered the United States as a lawful permanent resident in 1983. Between November 1994 and December 1998, Petitioner was convicted five times of marijuana related offenses.[2] On November 4, 1994,

---

**1.** As of March 1, 2003, the INS ceased to exist as an agency under the umbrella of the Department of Justice. Its immigration enforcement functions thereafter were transferred to the Department of Homeland Security. *See Homeland Security Act of 2002*, Pub.L. No. 107–296, § 441, 116 Stat. 2135, 2192 (Nov.

25, 2002). For ease of reference and because the agency was known as the INS at the time of the events pertinent to this appeal, this opinion refers to the respondent as the INS.

**2.** At one point during Petitioner's removal proceedings, the INS suggested that Petitioner had been convicted of a sixth marijuana

October 23, 1996 and May 7, 1998, Petitioner pleaded guilty to criminal sale of marijuana in the fourth degree, in violation of New York Penal Law § 221.40. On January 5, 1998 and December 1, 1998, Petitioner pleaded guilty to criminal possession of marijuana in the fifth degree, in violation of New York Penal Law § 221.10.

## A. The Administrative Removal Proceedings

In July of 2000, the INS began removal proceedings against Johnson as an alien convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and as an alien convicted of a crime related to a controlled substance, 8 U.S.C. § 1227(a)(2)(B)(i). In the charging document, and at the hearing before the IJ, the INS relied solely on Petitioner's May, 1998 conviction. On August 15, 2000, the IJ found Petitioner removable on the basis of this conviction. The IJ's decision was affirmed by the BIA on January 9, 2001.

Shortly thereafter, Johnson succeeded in having his May 7, 1998 judgment of conviction vacated pursuant to New York Criminal Procedure Law § 440.10(1)(h). Under BIA precedent, a criminal conviction that has been so vacated does not constitute a conviction for immigration purposes. *In re Rodriguez–Ruiz*, 22 I. & N. Dec. 1378, 1379 (BIA 2000). Accordingly, on March 30, 2001, the INS moved both to reopen and to remand Petitioner's removal proceedings. In its motion, the INS conceded that the vacatur of Petitioner's May, 1998 judgment of conviction rendered that conviction an inadequate factual predicate for finding Petitioner to be removable. But the Service nonetheless suggested that termination of removal proceedings was not warranted. Instead, it asked that the

case be remanded so that it could amend the charging document to include Petitioner's other marijuana convictions. The Petitioner did not file a response to the INS's motion. Subsequently, the BIA granted the motion to reopen as unopposed. The BIA's opinion included the "further order" that the record be "remanded to the Immigration Judge for further proceedings."

On remand, the INS amended the charging document to included Petitioner's four other marijuana convictions. Petitioner, who was *pro se*, responded by filing a motion to terminate his removal proceedings. In that motion he alleged, *inter alia*, that the INS was barred by res judicata from bringing new charges against him. Specifically, Petitioner argued that his other marijuana convictions were known to the INS at the time of his initial removal proceedings, and, accordingly, that they constituted an improper basis for renewing removal proceedings before the IJ. Noting that the Service had a "full and fair opportunity" to raise the other marijuana convictions in the context of the original removability proceedings, the Petitioner argued that the INS should not be allowed to relitigate the issue of removability.

In an opinion dated September 17, 2001, the IJ found Petitioner to be removable as charged. The IJ rejected Petitioner's res judicata arguments, concluding that "the parties never had an opportunity to reach the merits of the present issues because the respondent [in his original proceedings] was not charged with [convictions other than the May 7, 1998 conviction]." The IJ further stated that "[t]he respondent's argument that the Service should have alleged all of his convictions in the

---

offense. To date, the Service has not charged Johnson with removability on the basis of this

putative sixth conviction.

first proceeding is ... without merit" because "[t]here is nothing in the doctrine of res judicata which requires the Service to do so."

Petitioner filed a timely appeal to the BIA, requesting that the Board terminate his removal proceedings. On February 5, 2002, the BIA issued a decision denying Petitioner's request for termination and affirming the decision of the IJ on the merits.[3] In its decision, the Board rejected Petitioner's res judicata and collateral estoppel claims on the grounds that the convictions forming the basis of the new removal order "had never been previously litigated by the parties." The Board also noted that *"res judicata* will not bar subsequent litigation if new evidence arises after the conclusion of ... previous litigation." The Board did not clarify how this assertion was relevant, given that all of Petitioner's convictions were known or knowable before the end of the earlier litigation.

## B. The Habeas Corpus Proceeding

On February 20, 2001, Petitioner filed a habeas petition in the Eastern District of New York pursuant to 28 U.S.C. § 2241. In that petition, he challenged the BIA's January 9, 2001 decision—which at that time was still in effect—*inter alia* on the grounds that his May 7, 1998 conviction should not be considered an "aggravated felony." Petitioner subsequently amended

his petition twice to raise claims relating to the renewal of his administrative proceedings below. Johnson's amended petition alleged, among other things: 1) that the introduction of the new charges by the INS was barred by res judicata, 2) that the BIA erred in granting the Service's motion to reopen in the absence of "evidence which was not available at the time of the previous proceeding[s]", and 3) that Petitioner's convictions (other than the vacated May 7, 1998 conviction) did not constitute aggravated felonies.

Despite the existence of a stay of removal, Petitioner was removed from the United States on February 28, 2002. Subsequently, on October 30, 2002, a status conference was held without Petitioner, at which the district court (Raggi, *J.*) addressed the merits of Petitioner's claims.[4] The district court found Petitioner's res judicata claims to be without merit "for the reasons the government [had argued] in its papers," but sought additional information relating to whether Petitioner's convictions could be considered aggravated felony offenses. The district court did not specifically address whether the BIA had erred in reopening and remanding Petitioner's removal proceeding in the absence of any previously unavailable evidence.

By letter dated November 4, 2002, the INS submitted the additional information

3. There is some uncertainty in the record as to which of Petitioner's filings were in fact before the Board when it rendered its February 5, 2002 ruling. Petitioner filed an initial brief, styled as a motion to terminate, with the Board in late September or early October of 2001. He subsequently filed an appellate brief, again styled as a motion to terminate, in January, 2002. Petitioner's January, 2002 filing was, according to a notice dated January 11, 2002, rejected by the Board as untimely. The Board nevertheless proceeded to respond to Petitioner's specific arguments on the merits, thereby suggesting that it must have reviewed one or both of the filings submitted by

Petitioner. We need not, however, determine which of Petitioner's filings were before the Board in order to resolve the issues presented in this appeal.

4. The District Court declined to consider the question of whether Johnson's removal from the United States mooted his habeas petition. As correctly noted by the INS, we have since held in *Swaby v. Ashcroft*, 357 F.3d 156, 159–60 (2d Cir.2004), that an alien's removal from the United States does not moot a habeas challenge to the underlying order of removal.

requested by the district court. On December 12, 2002, the district court denied the petition for a writ of habeas corpus "for the reasons stated on the record" at the October 30, 2002 status conference. The Petitioner appealed.[5]

## II. DISCUSSION

Petitioner alleges that the Board violated its own regulations in granting the Service's motion to reopen and remand his proceedings. Before we can consider Petitioner's arguments, however, we must address the Service's suggestion that, for various reasons, we lack authority to hear the merits of Petitioner's appeal.

### A. Habeas Corpus Jurisdiction

 We have previously held that discretionary determinations made by the Board of Immigration Appeals are not reviewable in the context of a § 2241 habeas petition. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) (per curiam). The Service contends that the BIA's decision to grant its motion to reopen and remand was discretionary, and hence outside of the scope of § 2241 habeas review.

 The INS, however, misapprehends the extent of the BIA's discretion to grant or deny such motions. The BIA is

required to follow the law, including INS regulations and BIA precedents that impose mandatory limitations on the granting of procedural motions. While the BIA has substantial discretion to grant or deny motions that fulfill those basic prerequisites, it is without discretion, when it deals with motions made by the parties, to ignore existing regulatory requirements. *See, e.g., Ramon–Sepulveda v. INS,* 743 F.2d 1307, 1309–10 (9th Cir.1984) (reversing an IJ decision to grant a motion to reopen where regulatory requirements were not met); *cf. Acevedo v. INS,* 538 F.2d 918, 920 (2d Cir.1976) (per curiam) (noting that the BIA "would have been derelict in its duty" had it granted a reopening in a case where the movant presented no new, and previously unavailable, evidence). The question of whether the BIA has improperly ignored mandatory regulatory requirements is thus a question of law that falls within the scope of the district court's § 2241 habeas review. *See, e.g., Mu–Xing Wang v. Ashcroft,* 320 F.3d 130, 142–43 (2d Cir.2003).[6]

### B. Exhaustion of Administrative Remedies

 The Service also suggests that the Petitioner failed to exhaust his administra-

5. On appeal, Petitioner was appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B). After this case was argued, the attorney for the Petitioner was indicted in the Eastern District of New York on unrelated charges (04–CR–587). Because there is no suggestion that a conflict existed at the time of argument, and in view of the result we reach, we deem it unnecessary to appoint new counsel before deciding the issues before us. On remand, and in further proceedings, however, if it is appropriate for Petitioner to have appointed counsel, a new attorney should be designated by the court.

6. The Supreme Court cases that the INS relies on do not suggest the contrary. While the Supreme Court has repeatedly stated that the Board's decision to deny certain procedural

motions is discretionary, the Court has always done so in the context of upholding the denial of motions that could have been granted under the applicable regulations. *See, e.g., INS v. Doherty,* 502 U.S. 314, 320, 327–29, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *INS v. Abudu,* 485 U.S. 94, 110–11, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988); *INS v. Jong Ha Wang,* 450 U.S. 139, 143 n. 5, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981). For, as the Court has also repeatedly observed, "the regulation [governing motions to reopen] ... is couched solely in negative terms; it requires that under certain circumstances [such motions] ... be denied, but does not specify the conditions under which [they] shall be granted." *Doherty,* 502 U.S. at 322, 112 S.Ct. 719; *see also Wang,* 450 U.S. at 143 n. 5, 101 S.Ct. 1027.

tive remedies because he did not file a response to the INS's motion to reopen and remand. Immigration and Nationality Act § 242(d)(1) provides that "[a] court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). We have construed this requirement to apply to § 2241 habeas proceedings. *Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir.2004).

This Court has not extensively discussed the effect that a "procedural default" may have in the context of § 242(d) exhaustion. But, whatever its possible effects in other circumstances, Petitioner's failure to object to the Service's motion does not, in the case before us, constitute a failure to exhaust administrative remedies. Petitioner's arguments in opposition to a remand to hear new charges were addressed on their merits by both the Immigration Judge and the BIA. And it is clear that the agency itself did not consider Petitioner to have "forfeited" his ability to contest the renewed removal proceedings. We therefore conclude that there is no § 242(d) barrier to judicial review of Petitioner's claims.[7] *See, e.g., Waldron v. INS*, 17 F.3d 511, 515 n. 7 (2d Cir.1994) (finding that an issue was adequately exhausted even where it had been raised late in an alien's administrative proceedings, because it had been addressed on its merits, thus "apparently excusing [the alien's] failure to raise the issue previously").

We, therefore, turn to the merits of Petitioner's appeal.

## C. The Merits

"Motions to reopen [final orders of removal] are disfavored." *Abudu*, 485 U.S. at 107, 108 S.Ct. 904. Such motions are allowed under INS regulations only where a party seeks to present new evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2(c)(1) (2001) (now codified at 8 C.F.R. § 1003.2(c)(1)). Significantly, the BIA has, by decision, imposed an equivalent precondition on the granting of a motion to remand. *In re Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992). As a result, where it appears to the Board that the evidence sought to be offered is not material or was already available or could have been discovered or presented at the former hearing, the Board is constrained by precedent to deny a motion to remand.[8] *See* 8

7. Although the INS focuses on Petitioner's failure to file a response to the Service's motion to reopen, the INS's argument, broadly construed, could also be read to suggest that Petitioner failed to exhaust because he did not raise, in the proceedings below, the precise regulation/precedents-based legal argument that we find compelling. *See infra*. The substance of Petitioner's argument, however, was clearly raised before both the IJ and the BIA. Thus, the Petitioner, who was *pro se*, specifically alleged that the INS knew of his prior convictions at the time of his initial proceeding, and that this rendered those convictions an improper basis for renewing removal proceedings against him before the IJ. This is exactly the substance of the argument that we find persuasive today. We also note that there is some possibility that the BIA may in

fact have had before it and actually reviewed a regulation-based argument by Petitioner. Although the Board's decision does not discuss Petitioner's argument on this point, Johnson did make such a challenge in his January, 2002 appellate brief. As mentioned, *supra*, at note 3, it is not clear whether this brief was accepted and reviewed by the Board. We therefore do not rely on it in concluding that Petitioner has properly exhausted his administrative remedies.

8. The Board, acting on its *sua sponte* authority, and in "extraordinary" circumstances, may grant a motion to reopen or remand that does not comply with this or other regulatory requirements. *See* 8 C.F.R. § 3.2(a) (2001) (now codified at 8 C.F.R. § 1003.2(a)); *Guan Shan Liao v. United States Dep't of Justice*,

C.F.R. § 3.2(c)(1) (2001); *see also Coelho,* 20 I & N. Dec. at 472–73.

### i. *The Motion to Reopen*

██ The vacatur of Petitioner's May 7, 1998 conviction was material and certainly constituted previously unavailable new evidence. As the Service conceded in its motion to reopen, the expunging of Petitioner's conviction pursuant to New York Criminal Procedure Law chapter 440 rendered that conviction an improper basis for a finding of removability under the BIA's precedents. *See Rodriguez–Ruiz,* 22 I. & N. Dec. at 1378. Given that the May, 1998 conviction constituted the sole basis for the finding of removability against Petitioner, it was more than appropriate for the Board to reopen his proceedings upon being informed of the vacatur. *See, e.g., Wiedersperg v. INS,* 896 F.2d 1179, 1182–83 (9th Cir.1990) (finding that BIA abused its discretion where it declined to reopen an alien's proceedings subsequent to the nullification of the sole conviction on the basis of which he was adjudged deportable); *Becerra–Jimenez v. INS,* 829 F.2d 996, 1000–02 (10th Cir.1987) (remanding to the BIA for consideration of the fact that the alien's convictions had been expunged).

We conclude that the Board did not err in granting the Service's motion to reopen.

### ii. *The Motion to Remand*

██ The vacatur of Petitioner's conviction was not, however, "evidence sought to be offered [on remand]." 8 C.F.R. § 3.2

(2001). The BIA, as a matter of practice, routinely reopens and terminates proceedings of this kind without remanding for further inquiry before an IJ. *See, e.g., Rodriguez–Ruiz,* 22 I. & N. Dec. at 1380; *In re Gutnick,* 13 I. & N. Dec. 672, 674 (BIA 1971). And while the Service attached a copy of the state court decision vacating Petitioner's conviction to its motion for a remand, it did not suggest that there were any factual issues with respect to the vacatur that needed to be further explored on remand. The sole reference in the Service's motion to evidence to be introduced on remand was that "[u]pon remand, the Service will file with the Immigration Judge a Form I–261 to allege [Mr. Johnson's other marijuana convictions]." And in fact, on remand, the Service introduced only this *previously available* evidence of Johnson's removability.

 In the absence of any indication that the INS intended to introduce any previously unavailable evidence upon remand, the Board's own precedents clearly mandated that the Service's motion be denied. *See Coelho,* 20 I. & N. Dec. at 471–73; *see also Kuang–Te Wang v. Ashcroft,* 260 F.3d 448, 451 & n. 2 (5th Cir.2001) (discussing BIA requirements for granting motions to remand). While the Board is free to modify its precedents in a reasoned fashion, it acts arbitrarily and unlawfully when it simply ignores established holdings.[9] *See, e.g., Ke Zhen Zhao v. United States Dep't of Justice,* 265 F.3d 83, 93 (2d Cir.2001) (noting that the BIA acts arbi-

293 F.3d 61, 72–73 (2d Cir.2002). Such authority is rarely invoked by the Board and has not been employed in this case.

**9.** Although the INS does not raise this argument, we note that in this Circuit, the INS's failure to follow its own regulations does not in all circumstances compel the vacatur of a challenged order of removal in the absence of prejudice. *Waldron,* 17 F.3d at 518 (finding

that where the violated regulation protects fundamental constitutional or statutory rights, a failure to follow the regulation alone requires a vacatur, but where the regulation does not protect important rights, an alien is generally required to demonstrate prejudice). In the case before us, however, the prejudice to Petitioner from the remand of his proceedings is plain.

trarily where it "inexplicably departs from established policies"); *Johnson v. Ashcroft,* 286 F.3d 696, 700 & n. 4 (3d Cir.2002) (citing authorities in support of the proposition that the BIA must be reversed where it ignores its established holdings).

It follows that the BIA erred in granting the INS's motion to remand.

## D. New Removal Proceedings

■■■ To say that the granting of the INS's motion to remand was error does not, however, mean that the government is barred from seeking to remove Petitioner

on the basis of his other marijuana convictions, *in new proceedings.* And we wish to make clear that there is nothing in our opinion that precludes the INS from initiating such proceedings. Nor is there anything to preclude Petitioner from arguing, as he has before this Court, that such proceedings are barred by res judicata, or that the convictions on which they are based are not aggravated felonies. Because we find that the BIA erred in granting the Service's motion for remand, we need not and do not reach those issues today.[10]

10. The author of this opinion, speaking for himself and Judge Miner, does note, however, that the issue of the proper application of res judicata in removal proceedings is a complicated one. That res judicata does sometimes apply in immigration proceedings is unquestionable. *See, e.g., Medina v. INS,* 993 F.2d 499, 503–04 (5th Cir.1993) (applying res judicata in the deportation context); *Ramon–Sepulveda v. INS,* 824 F.2d 749, 750 (9th Cir. 1987) (same); *see also* Restatement (Second) of Judgments § 83 (setting out the circumstances in which administrative judgments are given res judicata effect). Indeed, the Service's briefing in this case suggests that it accepts the proposition that res judicata may, in appropriate circumstances, apply to removal proceedings. The more difficult question is whether res judicata may be applied in the circumstance suggested here, i.e., to bar the Service from lodging additional removability grounds.

In civil suits a litigant must advance all available evidence and legal arguments relating to a claim or controversy in the context of a single proceeding. *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir. 1997). This is because "res judicata bars [future litigation of] all claims that could have been advanced in support of a previously adjudicated cause of action." *Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir.1989). And it is no answer to a claim of res judicata, as distinguished from a claim of collateral estoppel, that no decision was reached previously on the newly-asserted claims. *See Leather v. Ten Eyck,* 180 F.3d 420, 426 (2d Cir.1999); *see also* Corpus Juris Secundum Judgments §§ 758, 803. Applied

strictly to immigration proceedings, this would seem to suggest that the government should lodge all known grounds for removal in support of its removability charges, or face the prospect of a future bar.

On the other hand, the filing of criminal charges, to which the lodging of grounds for removal bears a strong resemblance, is not subject to this form of res judicata prohibition. *See, e.g., Garrett v. United States,* 471 U.S. 773, 790, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (joining of all criminal claims in a single indictment is not constitutionally required); *see also State v. Crawford,* 169 Vt. 371, 737 A.2d 366, 368 (1999). The difficulty is that removal proceedings, though involving matters that are quasi-criminal, have been deemed civil. *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). This has worked to the advantage of the government in many circumstances. *See, e.g., id. at* 1050, 104 S.Ct. 3479 (finding that the exclusionary rule should not apply in deportation proceedings); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (finding that the Ex Post Facto Clause does not apply to deportation). Here, instead, the designation of immigration proceedings as civil may operate to the Service's disadvantage. All this gives weight to the suggestion (occasionally found in Supreme Court decisions) that at least some of the protections, and (we might add) some of the disadvantages, of criminal proceedings should perhaps extend to the removal context. *See, e.g., Galvan,* 347 U.S. at 530–31, 74 S.Ct. 737. Because the facts of this case allow its resolution without taking up this difficult question, the issue does not need to be further addressed.

## III. CONCLUSION

We have determined that the BIA acted contrary to its precedents in granting the Immigration and Naturalization Service's motion to remand. We therefore REVERSE the district court's judgment and REMAND the case to that court with instructions to grant the writ.