**Baswell FRANCIS, Petitioner,**

v.

**Alberto GONZALES,\* Attorney General of the United States, Respondent.**

**Docket No. 04–2457–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Nov. 29, 2005.

Decided: March 27, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted Attorney General Alberto Gonzales for former Attorney General John Ashcroft as the respondent in this case.

Mark T. Kenmore, Buffalo, NY, for Petitioner.

Gregory R. Miller, United States Attorney for the Northern District of Florida (E. Bryan Wilson, Assistant United States Attorney, of counsel), Tallahassee, FL, for Respondent.

Before: McLAUGHLIN and SACK, Circuit Judges, and KOELTL, District Judge.**

SACK, Circuit Judge.

The Immigration and Naturalization Service[1] instituted removal proceedings[2] against petitioner Baswell Francis in 1999, alleging that because he had two Jamaican convictions for possessing marijuana in the early 1980s, Francis had been statutorily inadmissible at the time he obtained his temporary resident status in 1988 and his permanent resident status in 1990. In support of its allegations, the government relied on two pieces of evidence: (1) a colloquy between Francis and an Immigration Judge ("IJ"), which the government construed as Francis's admission of one of the Jamaican convictions; and (2) a faxed photocopy of Francis's "rap sheet" from a Jamaican police department. Because we think that no "rational factfinder" could conclude that this evidence, standing alone, constitutes clear, convincing, and unequivocal evidence that Francis had two "convictions," as that term was defined by applicable law in 1988 and 1990, we grant the petition, vacate the BIA's order, and remand for further proceedings.

## BACKGROUND

On November 29, 1988, petitioner Baswell Francis became a lawful temporary resident as a special agricultural worker ("SAW"). See Immigration and Nationality Act ("INA") § 210, of the 8 U.S.C. § 1160. The SAW program is unique in two respects. First, it contains a confiden-

---

** The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

1. "[T]he then-Immigration and Naturalization Service ... has since ceased to exist as an independent agency, see Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (Nov. 25, 2002) ...." *United States v. Ceballos*, 340 F.3d 115, 118 (2d Cir.2003).

2.

 The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009–546, "realigned the vocabulary of immigration law, creating a new category of 'removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 Colum. L.Rev. 961, 966 (1998); *see also Mohammed v. Reno*, 309 F.3d 95, 96 (2d Cir.2002) (referring to the change in nomenclature). We nonetheless use the terms "deport," "deportation," and "deportable" from time to time in this opinion as well-worn colloquialisms for "remove," "removal," and "removable," respectively. *Evangelista v. Ashcroft*, 359 F.3d 145, 147 n. 1 (2d Cir.2004).

tiality provision, INA § 210(b)(6)(A), 8 U.S.C. § 1160(b)(6)(A), under which all information—even false information—an alien provides in his or her initial application for temporary residence can be used only to determine the applicant's eligibility for temporary resident status and only during the two-year period before adjustment to permanent resident status.[3] In Francis's case, this two-year period spanned from 1988 to 1990. Because of the SAW program's confidentiality provision, we do not have access to his application and do not know whether Francis disclosed any prior convictions in it.

The second unique feature of the SAW program is that, under INA § 210(a)(2)(B), 8 U.S.C. § 1160(a)(2)(B), the status of an SAW worker is automatically adjusted from lawful temporary resident to lawful permanent resident after two years. "That section adjusts the status of an alien granted lawful temporary status ... to that of a lawful permanent resident on the basis of a fixed schedule, without regard for the alien's admissibility at that time. This mechanism is perhaps unique under the immigration laws ...." *Matter of Jimenez–Lopez*, Interim Decision No. 3211, 20 I. & N. Dec. 738, 742 (BIA 1993) (citation omitted). On December 1, 1990, Francis was automatically adjusted to permanent resident status under this provision.[4]

Because Francis thus became a permanent resident, he is afforded heightened procedural protections in any deportation proceedings. "[T]he burden of proof is now on the Service to establish the applicant's inadmissibility, and the full panoply of due process considerations now applies ...." *Id.* at 743 n. 6. The government must also meet a heightened standard of proof by establishing Francis's deportability by "clear, unequivocal, and convincing

---

3. INA § 210(b)(6)(A) states:

> [N]either the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may ... use the information furnished by the applicant pursuant to an application filed under this section for any purpose other than to make a determination on the application, including a determination under subsection (a)(3)(B) [determining whether the alien is eligible for permanent resident status], or for enforcement of paragraph (7) [punishing fraudulent statements].

8 U.S.C. 1160(b)(6)(A). "Section 210(b)(6)(A) of the Act clearly limits the use of information submitted by an applicant in connection with an original determination of eligibility for temporary resident status." *In re Masri*, Interim Decision No. 3419, 22 I. & N. Dec. 1145, 1152 (BIA 1999). Once the adjustment to permanent resident status is complete, the government may still rescind the permanent resident status or initiate deportation proceedings, but it may not do so on the basis of information provided in the initial application. "Of course, the Service is not precluded from introducing evidence of fraud obtained from an independent source in the context of rescission proceedings. However ... the use of information provided by the alien in connection with his initial application for lawful temporary residence is prohibited." *Id.* at 1151.

4. Francis argues that once permanent resident status is granted under the SAW program, an alien cannot be deported until his or her status is rescinded by special procedures set out in 8 C.F.R. §§ 210.4(d)(2), (3). This argument is without merit. The SAW program allows the Attorney General to rescind a grant of temporary resident status under section 210(a)(3)(b) for certain acts that would not otherwise make the alien deportable. When the Attorney General does so, the SAW temporary resident must be provided with special notice under 8 C.F.R. § 210.4(d)(3). If an SAW is independently found to be deportable by an immigration judge, however, those special notice provisions do not apply. Rather, the regulations specifically state that "[t]he temporary resident status of a[n SAW] is terminated *automatically and without notice* under section 210(a)(3) of the Act upon entry of a final order of deportation by an immigration judge based on a determination that the alien is deportable." 8 C.F.R. § 210.4(d)(1) (emphasis added).

evidence." *Woodby v. INS,* 385 U.S. 276, 277, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

Francis apparently applied for United States citizenship at some point in 1999. (His application is not included in the record; we do not know if it contained any statements concerning past convictions.) It was only after receiving that application that the government initiated deportation proceedings against Francis, alleging that he had been convicted twice in Jamaica for possession of marijuana, once in 1980 and once in 1981.

Under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." The government argued that Francis was inadmissible when he received temporary resident status in 1988 and permanent resident status in 1990 because under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), any alien who is convicted of "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible." Because, according to the government, Francis's two convictions rendered him inadmissible under section 212 at the time he became a temporary and permanent resident, he is now deportable under section 237.

Francis appeared at a hearing on the government's charges before an IJ in Buffalo, New York on September 13, 1999. Francis told the IJ that he had contacted a lawyer from the court's list of free legal services. The IJ responded that no lawyer had filed an appearance on his behalf. The IJ then accommodated Francis's concerns by rescheduling the hearing until February 14, 2000, to give Francis additional time to contact a lawyer.

At the February hearing, Francis reported that he had tried again to obtain representation but that the lawyer to whom he had placed telephone calls had never returned them. The IJ responded that "I'm afraid I'm going to have to go forward with your case because it's been pending for a while" and that "I'm going to have to ask that you speak on your own behalf." *See* Tr. of Removal Hearing, Sept. 13, 1999, at 8.

The following exchange ensued:

Q. . . . They say you were convicted on February 19th, 1980 in Saint James, Jamaica, West Indies of the violation of the crime relating to illicit possession of or trafficking in narcotic drugs or marijuana, to wit: possession of marijuana. Is that true?

A. Convicted. I remember charge but for only one possession of marijuana.

Q. Yes, but were you convicted of it? Did you go to Court?

A. Yes, I go to Court.

Q. The judge say you were guilty?

A. Yes, sir.

Q. Okay. Then it says . . . you were convicted on December 16th, 1981 in Saint James, Jamaica, West Indies of the violation of a crime relating to the illicit possession of or trafficking in narcotic drugs or marijuana, to wit: possession of marijuana. So the next year, a year later, over a year later, you were charged with the same things just about. Is that true?

A. I try to remember that case but I still can't remember about it, I'm trying to say, when was that because I know they charge with possession of marijuana in Jamaica once, so I was trying to remember when was that one.

Q. Well, were you arrested in December of '81? Everybody remembers if they get arrested?

A: Yes, well, I remember—

Q. And I know you remember the first time—

A. Yes, I remember the first—

Q. —in February 1980.

A. —I remember the first time because that was on my birthday—

Q. Okay.

A. —I think.

Q. Well what happened the second time?

A. I don't remember if I was, if it was the same thing, smoking, possession of marijuana, but I can't quite remember that one but I remember the first one.

Q. You mean you can't remember the exact charge?

A. Yes, I can't remember—

Q. Well, do you remember being arrested?

A. Yes, I think I remember being arrested.

Q. Okay. But you don't—did it have something to do with narcotics?

A. Maybe we say marijuana.

Q. Marijuana?

A. Yes.

Q. Okay, it says here that you were in possession of marijuana and, or you were trafficking in it. So—

A. No, I wasn't trafficking no marijuana. I never been trafficking marijuana.

Q. But you did have it on your person, right?

A. No it was a joint.

Q. A joint?

A. Yes.

Q. Okay. All right, so, I'll take that as an admission.

*Id.* at 10–12. Based on this testimony, the IJ ordered Francis deported.

Francis—now represented by counsel—appealed. The BIA vacated the IJ's order and remanded for further proceedings. The BIA agreed with the IJ that Francis had admitted one conviction but disagreed that he had admitted a second one. The BIA noted that under 8 C.F.R. § 210.3(e)(3)(iii), a waiver may be available if an alien is convicted of a single offense of simple possession of thirty grams or less of marijuana. The BIA therefore remanded for the IJ to determine whether Francis asked for and was granted a waiver at the time he sought temporary resident status.

On remand, the government reported that it had discovered an additional file indicating that, before Francis had entered the country in 1988, he had been ordered excluded during a 1985 proceeding in Baltimore. At the government's suggestion, the IJ placed an order for the file of the 1985 proceedings from the Federal Records Center.

The IJ questioned Francis, who confirmed that he had been previously been ordered excluded in 1985. The IJ asked: "Did you, how come you didn't tell your lawyer this, with all due respect? Didn't you think it was important to let her know that?" *See* Tr. of Removal Hearing, Aug. 20, 2002, at 16–17. Francis answered: "I never told her because the question never asked. Like you're asking me now." *Id.* at 17. The IJ adjourned the proceedings until both parties had an opportunity to inspect the file from the 1985 proceedings.

The 1985 records indicated that Francis had previously tried to enter the country with a false birth certificate under the name Leon Williams. The file included an order from the IJ in Baltimore stating that: "You do not appear to me to be

clearly and beyond a doubt entitled to enter the United States as you may come within the exclusion provisions of Section 212(a)(14), (19), (20), and (23) of the Immigration and Nationality Act, as amended, in that . . . you were convicted in Jamaica on two occasions for possession of marijuana." *See* Amended Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, May 23, 1985 (Government's Pre–Trial Mem., Ex. A). Included in the file was a copy of a Jamaican police report, which was prepared in response to a request for a check of Francis's (a.k.a Williams's) fingerprints. The report stated:

Subject was convicted 2/19/80 for possession of Ganja (Marijuana)[5] and was given three months hard labor but received a two-year suspended sentence. Subject was also convicted on 12/16/81 for possession of Ganja and was fined the U.S. Equivalent of $20 or one month's imprisonment. (Ganja amounts were not indicated).

Government's Pre–Trial Mem., Ex. B. The court again adjourned the hearing to allow counsel to prepare arguments in light of the new information.

At the adjourned hearing, the government took the position that, in light of the SAW confidentiality provisions, it could not use information (or misinformation) from the 1988 temporary resident application as a basis for seeking to have Francis deported. Instead the government argued that the 1985 hearings provided independent proof that Francis had been twice convicted for possession of marijuana and, therefore, that he had been ineligible for tempo-rary resident status when he applied in 1988. "[T]he two convictions say there's no [possibility of] waiver, so we can just rest on that." *See* Tr. of Removal Hearing, Dec. 5, 2002, at 36–37; *see also* Tr. of Removal Hearing, Oct. 29, 2002, at 28.

The IJ asserted, however, that he had the power to disregard INA § 210(b)(6)(A)'s confidentiality provision.[6] The IJ issued an order finding Francis deportable because he "obviously fail[ed] to reveal the existence of his convictions" on his 1988 application and because he "has had two convictions for possession of marijuana and is therefore statutorily ineligible for a waiver." Order of Immigration Judge, Dec. 12, 2002.

The BIA affirmed the IJ's order on alternate grounds. Instead of basing its ruling on misrepresentations in Francis's SAW application, protected under the INA, it adopted the government's position and found, on the basis of the police report together with Francis's admission to the IJ, that there was "sufficient evidence of record to sustain the charge o[f] removability." *In re Baswell Francis*, slip op. at 2, 2004 WL 1398747 (BIA, Apr. 7, 2004).

Francis petitions for review of the BIA's order.

## DISCUSSION

### I. Standard of Review

 We review the BIA's factual determinations under the substantial evidence test. *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 337 (2d Cir.2006). We have generally applied this test in claims for asylum, withholding of removal,

---

**5.** Francis argues that "ganja" is not listed as a controlled substance under American law. But ganja is a familiar term for "a potent preparation of marijuana used especially for smoking." *See* Merriam–Webster's Medical Dictionary, *available at* http://dictionary.refer-ence.com/search?q=ganja (last visited Mar. 24, 2006). In any event, the police report also includes the word "marijuana" in parentheses.

**6.** *See infra,* note 9.

or relief under the Convention Against Torture, where the alien bears the burden of proof. In this case, however, because Francis is a permanent resident, the government bears the burden of proof, which it must meet by adducing "clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *see also Berenyi v. Immigration Dir.,* 385 U.S. 630, 636–37, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967) ("When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by 'clear, unequivocal, and convincing evidence.' ... [T]hat status, once granted, cannot lightly be taken away ...." (footnotes omitted)).

■ As a preliminary matter, we must ascertain whether the substantial evidence test becomes more demanding as the government's underlying burden of proof increases. In an en banc decision, the Eleventh Circuit declared that it does not:

> We apply the substantial evidence test even when, as in this case, the government is required to prove its case by clear and convincing evidence in the administrative forum. In other words, the fact that the INS was required to prove [the alien's] deportability by clear and convincing evidence in the BIA does not make our review of the BIA's decision more stringent.

*Adefemi v. Ashcroft,* 386 F.3d 1022, 1027 (11th Cir.2004) (en banc) (footnotes omitted), *cert. denied,* —— U.S. ——, 125 S.Ct. 2245, 161 L.Ed.2d 1063 (2005). The court reasoned that "findings of fact made by administrative agencies, such as the BIA, may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a con-

trary conclusion is not enough to justify a reversal of the administrative findings." *Id.*

By contrast, the Sixth and Ninth Circuits have stated that evidence may need to be more "substantial" to meet the clear and convincing standard. According to the Sixth Circuit,

> Although our deferential standard of review works against overturning the Board, the underlying burden of proof in this case has very much the opposite effect.... Our task in this case, therefore, is to determine whether we are compelled to conclude that, contrary to the Board's finding, the record does not contain clear, unequivocal, and convincing evidence that [respondent] abandoned her LPR status in the United States.

*Hana v. Gonzales,* 400 F.3d 472, 475–76 (6th Cir.2005) (citations omitted); *see also Nakamoto v. Ashcroft,* 363 F.3d 874, 882 (9th Cir.2004) ("[C]ombining the substantial evidence standard with the burden of proof, we must determine whether substantial evidence supports a finding by clear and convincing evidence that [respondent] committed marriage fraud.").

We think the Sixth and Ninth Circuits have the better argument. *Cf. Joaquin–Porras v. Gonzales,* 435 F.3d 172, 181 (2d Cir.2006) (noting that in asylum cases "[w]e review de novo questions of law regarding what evidence will suffice to carry [the] burden of proof." (internal quotation marks and citation omitted)). Accordingly, under the substantial evidence test, in order to grant a petition for review of an order of the BIA, we are not required to find that any rational trier of fact would be compelled to conclude that Francis was in fact *not* convicted of two drug offenses. Rather, we must find that any rational trier of fact would be compelled to con-

clude that the proof did not rise to the level of clear and convincing evidence.[7]

## II. The Relevant Definition of "Conviction"

■ The government seeks to deport Francis under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), which states that "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." The government asserted that Francis was inadmissible at the time he received temporary and permanent resident status because of INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II). That section, in its current form, reads:

> any alien convicted of, *or who admits having committed, or who admits committing acts which constitute the essential elements of* . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

*Id.* (emphasis added).

Francis entered the country in 1988 and became a permanent resident in 1990. But the current statutory language in section 212(a)(2)(A)(i) first became effective in 1991 as part of the Immigration Act of 1990, Pub.L. No. 101–649, § 508, 104 Stat. 4978, 5051 (Nov. 29, 1990). Because INA § 237(a)(1)(A) makes deportable only aliens who were inadmissible "at the time of entry or adjustment," we must therefore consult the statute in effect from 1988 through 1990. The applicable version of the statute at that time, INA § 212(a)(23), 8 U.S.C. § 1182(a)(23), excluded any alien who "at any time *has been convicted* of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." (emphasis added). This provision was repealed by the 1990 Act and replaced with the statute's current language.

The government now concedes that the former INA § 212(a)(23), not the current INA § 212(a)(2), is the governing law in this case for purposes of determining Francis's deportability. *See* Gov't Supp. Letter Br. dated Jan. 17, 2006, at 2–3. In order to deport Francis, the government was therefore required to prove by clear, unequivocal, and convincing evidence that he was actually "convicted" of a drug crime, not merely that he admitted to the underlying criminal conduct.

The applicable definition of "conviction" was narrower in the relevant time period, from 1988 to 1990, than it is today. In *Matter of Ozkok,* Interim Decision No. 3044, 19 I. & N. Dec. 546 (BIA 1988), the BIA created a three-part test to evaluate

---

**7.** It may be useful in this regard to consult *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in which the Court announced the standard for overturning a conviction for insufficient evidence. The Court explained: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781 (emphasis omitted). Significantly, the Court rejected a more lenient, "any evidence" or "modicum of evidence" standard:

> Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence, *cf.* Fed. Rule Evid. 401—could be deemed a "mere modicum." But it could not seriously be argued that such a "modicum" of evidence could by itself rationally support a conviction beyond a reasonable doubt.

*Id.* at 320, 99 S.Ct. 2781.

whether a defendant has been convicted for purposes of federal immigration laws in cases where formal adjudication of guilt has been withheld and a defendant, despite his admission of guilt, has been given probation, a suspended sentence, or some form of rehabilitation program.

Where adjudication of guilt has been withheld, ... further examination of the specific procedure used and the state authority under which the court acted will be necessary. As a general rule, a conviction will be found for immigration purposes where all of the following elements are present:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id.* at 551–52. Under the *Ozkok* definition, it was possible for a defendant to plead nolo contendere, obtain a suspended sentence, or enter a rehabilitation program on probation—so long as the court stopped short of a formal adjudication of guilt—without having the offense be considered a conviction for purposes of immigration laws. This required an individualized analysis of the particular procedures of different state penal systems to determine whether a person had been "convicted." *See, e.g., Martinez–Montoya v. INS,* 904 F.2d 1018, 1025 (5th Cir.1990) (finding no "conviction" under Texas's deferred adjudication procedures because "the alien's opportunity to seek further proceedings on the issue of guilt ... distinguishes the Texas scheme from the Maryland deferred adjudication procedure considered in *Ozkok* "); *Molina v. INS,* 981 F.2d 14, 18–19 (1st Cir.1992) (Breyer, *C.J.*) (examining Rhode Island's nolo contendere scheme to determine whether nolo pleas constitute "convictions" under *Ozkok* ).

Congress subsequently indicated its dissatisfaction with the *Ozkok* test when it amended the INA to change the definition of conviction in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), enacted as Division C of the Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104–208, § 301(a), 110 Stat. 3009, 3009–575 (Sept. 30, 1996). The statute, in sharp contrast to the *Ozkok* regime, now declares that "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." INA § 101(a)(48)(B), 8 U.S.C. § 1101(a)(48)(B).

The House Conference Report explained that "[t]his section deliberately broadens the scope of the definition of 'conviction' beyond that adopted by the Board of Immigration Appeals in *Matter of Ozkok.*" H.R. Conf. Rep. No. 104–828, at 224 (1996). According to the Report, *Ozkok* "[did] not go far enough to address situations where a judgment of guilt or imposition of sentence [was] suspended,

conditioned upon the alien's future good behavior." *Id.*

For example, the third prong of *Ozkok* requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge. In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the *Ozkok* definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. This new provision, by removing the third prong of *Ozkok*, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws. In addition, this new definition clarifies that in cases where immigration consequences attach depending upon the length of a term of sentence, any court-ordered sentence is considered to be "actually imposed," including where the court has suspended the imposition of the sentence.

*Id.* At least five of our sister Circuits have acknowledged that in enacting IIRIRA, Congress specifically and deliberately abrogated the *Ozkok* test. *See Cruz–Garza v. Ashcroft,* 396 F.3d 1125, 1128 (10th Cir. 2005); *Madriz–Alvarado v. Ashcroft,* 383 F.3d 321, 329 n. 9 (5th Cir.2004); *Gill v. Ashcroft,* 335 F.3d 574, 577 (7th Cir.2003); *Griffiths v. INS,* 243 F.3d 45, 49–51 (1st Cir.2001); *Lujan–Armendariz v. INS,* 222 F.3d 728, 736–37 (9th Cir.2000).

For the purposes of this case, however, the relevant inquiry is not what the definition of conviction currently is, but what it was in 1988 and 1990. *Compare White v. INS,* 17 F.3d 475, 479 (1st Cir.1994) (Massachusetts's practice of putting some charges "on file" does not satisfy *Ozkok* definition of conviction) *with Griffiths,* 243 F.3d at 52 (concluding that such filing procedures do constitute convictions after enactment of the IIRIRA). Irrespective of presumptions against retroactivity, *cf. Molina,* 981 F.2d at 20–22 (examining whether revised federal definition of "conviction" should be applied retroactively to guilty pleas entered in reliance on the previous definition), the text of INA § 237(a)(1)(A) explicitly requires that we determine whether "at the time of entry or adjustment of status [Francis] was within one or more of the classes of aliens inadmissible *by the law existing at such time.*" 8 U.S.C. § 1227(a)(1)(A) (emphasis added). If Francis did not have at least one prior conviction under the *Ozkok* test, then he would have been admissible at the time of his entry and adjustment of status, and INA § 237 could not serve as a basis for his deportation now.

### III. The Government's Proof

The only evidence the BIA relied on other than Francis's own "admissions" to establish his prior convictions was a police report from Jamaica obtained in connection with the 1985 Baltimore proceedings. Francis argues that the police report was not admissible, and even if admissible, that it did not rise to the level of clear, convincing, and unequivocal evidence.

### A. Admissibility

■ As an initial matter, Francis challenges the admissibility of the Jamaican police report. In 1993, the Attorney General promulgated regulations in 8 C.F.R. § 1003.41 for determining what kinds of evidence may be used to prove a criminal

conviction in immigration proceedings. Section 1003.41(a) lists a series of judicial documents which "shall be admissible as evidence in proving a criminal conviction." 8 C.F.R. § .1003.41. Congress subsequently adopted a similar statutory list of evidence that· constitutes conclusive proof of a conviction. ·See 8 U.S.C. § 1229a(c)(3)(B); see also In re Luis E. Montoya–Martinez, 2003 WL 23521855 (BIA, Nov. 5 2003) (unpublished opinion) ("This section of·the Act generally utilizes the records listed in our regulation, 8 C.F.R. § 1003.41(a), but amends and expands that list of specific documents, and provides that such records conclusively establish the existence of a criminal conviction.").

In Francis's case, it is uncontested that the Jamaican police report does not fall within any of the "documents or records" listed in section 1003.41(a) of the regulations or in section 1229a(c)(3)(B) of the statute as proof of a conviction. But the regulations include an additional provision, 8 C.F.R. § 1003.41(d), which has no counterpart in the federal statute. 8 C.F.R. § 1003.41(d) states: "Any other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof." The BIA concluded that Francis's police report was admissible as such "any other evidence" under section 1003.41(d).

Francis argues that because Congress has specifically listed the items that constitute proof of conviction, the regulations may not supplement that list by allowing "[a]ny other evidence." But the Attorney General's regulations are entitled to Chevron deference and must be upheld so long as they are "permissible construction[s] of the statute." Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); see also Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 279–80 (4th Cir.2004). It

seems to us to be reasonable enough for the Attorney General to read the statute as a list of what documents constitute conclusive proof of conviction, as it says, but not as a prohibition on admitting other types of documents. As the Eleventh Circuit has observed, "section 1229a(c)(3)(B) does not state that the forms of proof it lists constitute the sole means of establishing a criminal conviction; rather, the statute merely says that such forms 'shall constitute proof of a criminal conviction.' Other forms of proof will suffice if 'probative.'" Fequiere v. Ashcroft, 279 F.3d 1325, 1327 (11th Cir.2002). Moreover, we have cited approvingly, albeit in dicta, to 8 C.F.R. § 1003.41(d), noting that "for immigration purposes, a judgment is unnecessary (though preferred) to establish the fact of conviction." Gousse v. Ashcroft, 339 F.3d 91, 94 n. 1 (2d Cir.2003). We conclude that the BIA did not err in finding the police report admissible.

### B. Sufficiency

█ 1. The Use of "Rap Sheets" as Evidence of Convictions. The Federal Register's report of the Final Rule adopting the regulations indicates that the Attorney General's office was sensitive to the distinction between the admissibility of evidence under 8 C.F.R. § 1003.41(d) and its ultimate sufficiency to prove an alien's prior conviction.

While the rule sets forth the types of records that are admissible to prove a criminal conviction, and expands the types of documents which have traditionally been submitted to establish a criminal conviction, the burden remains with the Service to prove the underlying issue of deportability by "clear, convincing and unequivocal" evidence. To meet this burden of proof, it·may be·necessary for the Service to introduce evidence beyond the initial documents presented. It is the Immigration Judge

who will determine if the records submitted meet the required standard of proof. As was stated when the proposed rule was published, the rule speaks to admissibility only; it does not state that the document or record is dispositive of the existence of a criminal conviction. For this reason, the title of the rule has been changed from "Record of Conviction" to "Evidence of Criminal Conviction" to more accurately reflect the content of the rule.

Att'y Gen. Order No. 1764–93, Executive Office for Immigration Review; Criminal Conviction Records, 58 Fed.Reg. 38952, 38953 (July 21, 1993). In fact, the Attorney General's Office carefully deliberated whether a "rap sheet" in particular should be admitted into evidence and how much weight it should be given.

> One commenter suggested that the rule be expanded to include admission of official criminal history records, or "rap sheets[."] While a "rap sheet" may contain some evidence of a criminal conviction, it might not include the essential aspects of a record of conviction. Therefore, while an official criminal history record, or "rap sheet[,]" may be admissible under paragraph (d) of the rule as some evidence of a criminal conviction, it lacks the essential protections that an abstract of conviction contains. The abstract, which requires specific and detailed information of a record of a criminal conviction, is intended to provide a reliable and accurate record of conviction. The abstract of conviction will originate directly from the state or court record repositories, and will be certified by both the state official who prepares the record, and the Service official who receives the record. These protections will ensure the completeness, accuracy and reliability of the records.

*Id.* The regulations thus do allow rap sheets to be admitted under 1003.41(d), but the commentary suggests that they will usually fail to rise to the level of clear and convincing evidence. Rap sheets lack the necessary information to describe the full record of conviction and do not necessarily emanate from a neutral, reliable source.

In identifying reliable evidence, there are good reasons to prefer records emanating from neutral courts and magistrates instead of from agencies whose jobs are to seek to detect and prosecute crimes. "Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions." *Arizona v. Evans,* 514 U.S. 1, 15, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (citation omitted). In addition to biases, there may also be increased possibility of error the farther the information spreads from its original source. *Cf. id.* at 26, 115 S.Ct. 1185 (Ginsburg, J., dissenting) (discussing the dangers of "incorrect and incomplete information" in FBI's computerized files).

Even if we were to credit a domestic rap sheet, moreover, a report from a foreign police department is even less reliable. We ordinarily are without dependable means to assess accurately the reliability of a foreign jurisdiction's prosecutorial or police records, and there is no indication that the IJ here had dependable means either. Neither we nor the IJ have any way of knowing how close a foreign jurisdiction's procedures are to our own. This is especially vexing when, as here, the foreign jurisdiction shares our language and our terminology. We may be tempted to assume a similarity that may or may not exist. *Cf. Small v. United States,* 544 U.S. 385, 125 S.Ct. 1752, 1755–56, 161 L.Ed.2d 651 (2005) (noting that "foreign convictions

differ from domestic convictions in important ways" and may "include a conviction from a legal system that is inconsistent with an American understanding of fairness").[8]

The Jamaican police report was thus admissible under 8 C.F.R. § 1003.41(d) against Francis, but, without more, it is unlikely to constitute clear, convincing, and unequivocal evidence that Francis was convicted of those crimes. In particular, the BIA failed to consider that what the police report described as a "conviction" may not have actually qualified as a "conviction" for the purposes of American immigration laws under the applicable *Ozkok* test. The police report indicates that for Francis's first possession of marijuana he received a suspended sentence and that for the second possession he received a fine. There is no indication one way or the other whether these proceedings were accompanied by formal adjudications of guilt. Even if we accepted the police report as true in all its particulars and understandable in our own terms, without the court record from the Jamaican convictions, we see no way for us, the BIA, or the IJ to conduct the appropriate analysis under *Ozkok*.

■ *2. Francis's Testimony as Evidence of Convictions.* The BIA concluded that the police report in combination with Francis's admission rose to the level of clear and convincing evidence. This admission, from a portion of the hearing transcript set forth at greater length above, is derived from this exchange:

Q. . . . They say you were convicted on February 19th, 1980 in Saint James, Jamaica, West Indies of the violation of the crime relating to illicit possession of or trafficking in narcotic drugs or marijua-

na, to wit: possession of marijuana. Is that true?

A. Convicted. I remember charge but for only one possession of marijuana.

Q. Yes, but were you convicted of it? Did you go to Court?

A. Yes, I go to Court.

Q. The judge say you were guilty?

A. Yes, sir.

Tr. of Removal Hearing, Sept. 13, 1999, at 10.

This testimony was insufficient to establish a formal conviction for purposes of American immigration laws in 1988 and 1990 under the *Ozkok* rule. Francis admitted that he went before a judge and that the judge said he was guilty. But he did not say—nor is there any evidence indicating—that the judge entered "a formal judgment of guilt" that would qualify as a conviction. Indeed, the police report states that Francis received a suspended sentence for his 1980 charge. At best, Francis's statement satisfies the first prong of *Ozkok*, that "a judge or jury has found the alien guilty," but it does not satisfy prongs two or three. The government must also prove that "the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed" and that "a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge." *Ozkok*, 19 I. & N. Dec. at 552.

Francis's Jamaican court proceedings may or may not have satisfied *Ozkok*'s standard for "convictions," but we cannot know whether they did from what is in the hearing record. For the foregoing rea-

---

**8.** In addition, as Francis points out, this particular police report was not properly authen-ticated by a consular officer pursuant to 8 C.F.R. § 287.6.

sons, we do not think that the IJ, or any "rational factfinder," could make that determination on the basis of what was before the IJ and the BIA. In order for the government to deport Francis under INA § 237, a rational factfinder must be able to conclude by clear, convincing, and unequivocal evidence in the record that at least one of Francis's convictions met the *Ozkok* standard. In this case, the government has failed, at least thus far, to meet that burden.

## CONCLUSION

For the foregoing reasons, we grant the petition insofar as we vacate the BIA's order and remand to give the BIA opportunity to conduct further factfinding to determine whether the government can produce sufficient evidence to sustain a finding that Francis is deportable. *See Griffiths*, 243 F.3d at 55 ("Where a reviewing court cannot sustain an agency decision because it has failed to offer a legally sufficient basis for that decision, the appropriate remedy is remand to the agency for further consideration.").[9]

---

9. There was evidently a dispute before the IJ and the BIA over whether Francis's attorney had waived the confidentiality provisions of the SAW program. In light of our decision to vacate and remand, we need not resolve the complicated legal questions involved in interpreting the SAW confidentiality provisions. *See In re Masri,* Interim Decision No. 3419, 22 I. & N. Dec. 1145, 1152 (BIA 1999). On remand, the BIA may want to reconsider whether Francis's waiver of confidentiality allowing the government to look at the 1988 documents (for purposes of determining whether Francis requested a waiver of inadmissibility) also necessarily constitutes a waiver of objections to their admissibility at trial.