*Rampersaud v. Barr*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: May 8, 2020          Decided: August 19, 2020)

Docket No. 19-825

_____

CHARRAN DANESHWAR RAMPERSAUD,

*Petitioner,*

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Before:

LEVAL, LOHIER, and PARK, *Circuit Judges.*

Petitioner Charran Daneshwar Rampersaud, a noncitizen resident of the United States, seeks review of an order of the Board of Immigration Appeals (BIA) finding him removable as an aggravated felon for having been convicted of fraud involving a loss to the victims exceeding $10,000. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(M)(i). The Immigration Judge found that Rampersaud met the $10,000 threshold on the ground that he was ordered to pay more than $77,000 in restitution from his convictions for a single count of insurance fraud and a single count of grand larceny, and the BIA affirmed. However, because the BIA failed to adequately consider whether more than $10,000 of the restitution represented loss to the victims of the insurance fraud as distinct from the grand larceny, we GRANT the petition for review, VACATE the decision of the BIA, and REMAND for further proceedings consistent with this opinion.

H. RAYMOND FASANO, ESQ., Youman, Madeo & Fasano, LLP., New York, NY, *for Petitioner*.

CRAIG A. NEWELL, JR., Trial Attorney, (Erica B. Miles, Senior Litigation Counsel, *on the brief*) *for* Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, DC, *for Respondent*.

LEVAL, *Circuit Judge*:

Petitioner Charran Daneshwar Rampersaud, a noncitizen[1] resident of the United States, seeks review of an order of the Board of Immigration Appeals ("BIA") finding him removable as an aggravated felon, *see* 8 U.S.C. § 1227(a)(2)(A)(iii). Rampersaud is a native of Guyana who has lived in the United States as a lawful permanent resident since 1987. In 2010, he was convicted in Westchester County, New York of one count of insurance fraud and one count of grand larceny. A conviction of an offense involving fraud or deceit in which the loss to the victim or victims exceeds $10,000 qualifies as an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M)(i). The BIA's conclusion that

---

[1] The Supreme Court has recently used the term "noncitizen" as equivalent to the statutory term "alien." *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). We do the same here.

2

Rampersaud was an aggravated felon was based on his conviction for insurance fraud. *See In re Charran Daneshwar Rampersaud*, No. A041 191 762 (B.I.A. Mar. 4, 2019), *aff'g* No. A041 191 762 (Immig. Ct. N.Y. City Sept. 20, 2018). The principal issue in this appeal is whether, in the immigration proceeding, the BIA satisfactorily justified its conclusion that the losses suffered by the victims of Rampersaud's insurance fraud offense exceeded $10,000.

In the 2010 criminal proceeding in Westchester County, Rampersaud pleaded guilty to one count of insurance fraud in the third degree and one count of grand larceny in the fourth degree, and was ordered to pay $77,199 in restitution without any indication whether the restitution order was for the benefit of victims of the insurance fraud, the grand larceny, or both. The Immigration Judge ("IJ") found him removable as an aggravated felon, interpreting the $77,199 restitution award as an indication that the insurance fraud offense caused more than $10,000 in victim losses, and the BIA affirmed on the same basis. Rampersaud now contends on this appeal, *inter alia*, that the Government failed to establish a loss to the victims in excess of $10,000 stemming specifically from the insurance fraud, as the $77,199 restitution

could have covered losses from either the insurance fraud offense, the grand larceny offense, or both.

We hold that the BIA relied on inadequate analysis in concluding that the $77,199 restitution order, on its own, showed that Rampersaud's insurance fraud caused more than $10,000 in victim losses. The Government undoubtedly may, in some circumstances, rely on a restitution award to establish the loss amount from a fraud offense. Its burden, however, is to demonstrate by clear and convincing evidence that more than $10,000 in loss is "tied to the specific counts covered by the conviction." *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009). Yet in this case, where the petitioner was convicted of two separate crimes and ordered to pay an overarching restitution amount without indication of what part, if any, was for the insurance fraud, the restitution order, without more, is insufficient to demonstrate that more than $10,000 in losses were caused by the insurance fraud count as distinct from the larceny count. The BIA gave no explanation why it concluded that more than $10,000 of the restitution award was attributable to losses caused by the insurance fraud. We therefore GRANT the petition for review, VACATE the decision of the BIA, and REMAND for further proceedings consistent with

this opinion, possibly including clarification by the BIA of its basis for attributing more than $10,000 in loss to the insurance fraud count.

## BACKGROUND

*The 2010 Criminal Conviction.* In 2008, Rampersaud was charged by a felony complaint in Westchester County with three counts of insurance fraud in the third degree and three counts of grand larceny in the third degree. According to the felony complaint, Rampersaud committed the insurance fraud offenses on August 3, September 27, and November 1, 2007, by actions related to his submission to insurers of materially false statements of property damage to a 2002 BMW automobile. The complaint alleged that he committed the grand larcenies on July 13, August 10, and October 6, 2007, by stealing on two occasions from the MetLife Insurance Company and on one occasion from the Grange Insurance Company. The language of the complaint does not relate the thefts from the two insurance companies to the false statements involving the 2002 BMW.

In November 2009, Rampersaud waived indictment and pleaded guilty in Westchester County Superior Court to an information charging a single count of insurance fraud in the third degree, in violation of New York Penal

5

Law ("NYPL") § 176.20, for the fraudulent insurance act committed on

August 3, 2007, as well as a single count of grand larceny in the fourth degree,

in violation of NYPL § 155.30, for the act of theft committed on July 13, 2007.

He was sentenced to one to three years' imprisonment. As part of his

sentence, he was ordered to pay restitution in the amount of $77,199. The

record evidence in the immigration proceeding does not show how the

Westchester court calculated the $77,199 amount or whether it was

attributable to losses caused by the insurance fraud, the grand larceny, or

both.[2]

---

[2] The Government contends on this appeal that the larceny counts were based on the same criminal scheme as the insurance fraud counts, and therefore that the victims of the two were the same. Although Rampersaud's brief appears to concede that point, neither the IJ nor the BIA relied on the proposition that the insurance fraud and the larceny were part of a single criminal scheme. The record establishes only that the grand larceny offense to which Rampersaud pleaded guilty occurred on or about July 13, 2007, when Rampersaud stole property from MetLife, and that the insurance fraud offense to which he pleaded guilty occurred on or about August 3, 2007, when he submitted false information to an insurer in support of a claim for insurance payment. Although it is certainly possible that the fraud and larceny charges were premised on the same overarching criminal transactions – for example, if Rampersaud committed the fraud offenses by submitting false claims to an insurer and committed the larceny offenses by receiving the illegitimate insurance payouts from those very false claims – the record does not provide clear and convincing evidence of such a link.

*Proceedings Below.* In April 2018, the Department of Homeland Security took Rampersaud into custody and initiated removal proceedings against him. The Government alleged that he was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) for two independent reasons: first, that his insurance fraud conviction qualified as an aggravated felony because it was an offense "involv[ing] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000," *see* 8 U.S.C. § 1101(a)(43)(M)(i); and second, that his grand larceny conviction qualified as an aggravated felony as "a theft offense . . . for which the term of imprisonment [is] at least one year," *see id.* § 1101(a)(43)(G). Rampersaud moved to terminate the removal proceedings, arguing, in relevant part, that his insurance fraud conviction was not an aggravated felony because the $77,199 in restitution did not measure the actual loss to the victim and there was no other evidence that the victim's loss exceeded $10,000.

The IJ found that the Government had established that Rampersaud was removable based on both of the aggravated felony grounds, and ordered him removed to Guyana. The IJ concluded that Rampersaud's insurance fraud conviction was a fraud aggravated felony as defined in

7

§ 1101(a)(43)(M), in that it involved fraud and that the restitution amount of $77,199 was "an indication of the loss suffered by the victim or victims." Certified Administrative Record ("C.A.R.") at 54. The IJ further noted that Rampersaud "had ample opportunity to provide evidence of the amount of loss that disputed that figure, yet did not submit any," giving the court "no basis for challenging the [Government's] evidence." *Id.* The IJ did not address how the $77,199 was calculated, nor did she support her conclusion that more than $10,000 of it represented loss from the insurance fraud conviction as opposed to the grand larceny conviction.

Rampersaud sought review of the IJ's decision before the BIA, which dismissed his appeal. The BIA did not address the IJ's conclusion that Rampersaud's grand larceny conviction was a theft aggravated felony making him removable; it affirmed the IJ's order of removal solely on the basis that his insurance fraud conviction was an offense involving fraud that resulted in a loss to the victim in excess of $10,000. Noting the IJ's reliance on the $77,199 restitution order, the BIA held "that in the absence of evidence to show that the restitution amount is not reliable, the [Government] has established that the loss involved more than $10,000." C.A.R. at 4 (citing *Taher*

*v. Sessions*, 726 F. App'x 855, 857 (2d Cir. 2018) (summary order); *Doe v.*

*Sessions*, 709 F. App'x 63, 65–67 (2d Cir. 2017) (summary order)). Like the IJ,

the BIA did not consider the possibility that all but $10,000 or less of the

restitution amount was attributable solely to the grand larceny, much less

provide any analysis of why that was not the case. The BIA instead faulted

Rampersaud for failing "to provide evidence of the amount of loss or explain

why the restitution amount may not reflect the amount of loss." C.A.R. at 4.

Rampersaud now argues, in support of his petition for review of the

BIA's decision, that the Government did not establish that his insurance fraud

conviction involved an actual loss of more than $10,000, because the

restitution amount reflected total losses from the two counts of conviction

without differentiation.[3]

---

[3] Contrary to the Government's argument, Rampersaud preserved this argument before the agency. Although Rampersaud did not raise this precise argument, he did argue generally that his $77,199 restitution order was not sufficient evidence of losses to the victim exceeding $10,000. "[A] petitioner is [not] limited to the exact contours of his argument below," and so we may consider "specific, subsidiary legal arguments . . . that were not made below." *Gill v. INS*, 420 F.3d 82, 86 (2d Cir. 2005).

## DISCUSSION

A noncitizen who is convicted of an aggravated felony at any time after admission to the United States is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). Section 101(a)(43) of the Immigration and Nationality Act enumerates a set of offenses that qualify as aggravated felonies, *see* 8 U.S.C. § 1101(a)(43), including any "offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," *id*. § 1101(a)(43)(M)(i). The central issue in this appeal is whether in reaching its conclusion that Rampersaud's insurance fraud offense caused more than $10,000 in losses to victims, the BIA relied exclusively on evidence that is insufficient to support that conclusion.

### i. Standard of Review

In reviewing a final order of removal, "we have jurisdiction to review constitutional claims or questions of law, including whether a specific conviction constitutes an aggravated felony, which we review *de novo*." *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009) (citing 8 U.S.C. § 1252(a)(2)(D)). The Government bears the burden of establishing by clear and convincing evidence that a noncitizen admitted to the United States is removable. *See* 8 U.S.C. § 1229a(c)(3)(A). Where the basis for an order of removal is the

noncitizen's commission of an aggravated felony that caused a specific monetary loss, the Government must establish the amount of loss by clear and convincing evidence. *See Nijhawan*, 557 U.S. at 42. We review the BIA's finding that the Government established the requisite loss amount under a standard that is "more demanding" than substantial evidence: to grant the petition, "we must find that any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence." *Francis v. Gonzales*, 442 F.3d 131, 138–39 (2d Cir. 2006).

ii.    Whether Rampersaud's Insurance Fraud Conviction Qualifies as an Aggravated Felony

For Rampersaud's insurance fraud offense to qualify as an aggravated felony, thereby making him removable, it must have "involve[d] fraud or deceit [and a] loss to the victim or victims exceed[ing] $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The fraud offense for which the BIA found Rampersaud removable was a violation of NYPL § 176.20, which provides that "[a] person is guilty of insurance fraud in the third degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of three thousand dollars." *Id.* Rampersaud has not disputed that his insurance

11

fraud offense "involve[d] fraud or deceit." The only issue before us is whether the BIA had a legally sufficient basis for its conclusion that victims of the insurance fraud suffered losses exceeding $10,000.[4]

The Supreme Court has instructed that the question whether a noncitizen's fraud offense satisfies the $10,000 monetary threshold must be assessed under "a 'circumstance-specific,' not a 'categorical,' interpretation." *Nijhawan*, 557 U.S. at 36. Under this approach, courts inquire into "the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Id.* at 40. We then ascertain whether the petitioner caused more than $10,000 in losses that are "tied to the specific counts covered by the conviction," and not "based on acquitted or dismissed counts or general conduct." *Id.* at 42 (citing *Alaka v. Att'y Gen.*, 456 F.3d 88, 107 (3d Cir. 2006), *overruled on other grounds by Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 267 (3d Cir. 2019)).

---

[4] Because the BIA did not address the IJ's alternate holding that Rampersaud's grand larceny conviction was a theft aggravated felony as defined in § 1101(a)(43)(G), we decline to address the issue. On remand the BIA may address that ground for removal in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16–18 (2002) (per curiam).

12

We conclude that the BIA failed to adequately analyze the question before it. Specifically, the BIA and IJ failed to consider, as is required by *Nijhawan*, whether more than $10,000 in victim losses were "tied to the specific count[] covered by [Rampersaud's] conviction" for insurance fraud. *Id.* The BIA and the IJ seem to have assumed that the $77,199 restitution amount listed on the sentencing form for his two counts of conviction was a reliable indicator of the loss caused by Rampersaud's insurance fraud. The restitution order, however, was not on its own sufficient evidence that a loss exceeding $10,000 was attributable specifically to the insurance fraud count.

Rampersaud's $77,199 restitution payment resulted from his having been charged with and having pleaded guilty to multiple offenses, only one of which was the fraud offense supporting his removability under § 1101(a)(43)(M)(i). All of the $77,199 (or at least all but $10,000 or less of it) could have stemmed not from the insurance fraud but from the grand larceny, or even from uncharged criminal conduct that was part of the same transaction as the grand larceny. *See* NYPL § 60.27(1), (4)(a) (New York courts "may require restitution or reparation as part of the sentence imposed upon a person convicted of an offense," where "offense" includes "the offense for

13

which a defendant was convicted, as well as any other offense that is part of the same criminal transaction"); *see also People v. Diallo*, 931 N.Y.S.2d 444, 446 (N.Y. App. Div. 2011).[5] The IJ and BIA did not consider these possibilities, nor did they point to any evidence in the record that would justify a conclusion that more than $10,000 in victim losses were fairly attributable to the insurance fraud itself. The BIA thus erred in holding, solely on the basis of the $77,199 restitution order, that the insurance fraud offense caused more than $10,000 in losses.[6]

---

[5] NYPL § 60.27(4)(a) also provides that restitution awards may include losses from any offenses "contained in any other accusatory instrument disposed of by any plea of guilty by the defendant to an offense." Here, Rampersaud was initially charged by a six-count felony complaint, four counts of which were dismissed when Rampersaud agreed to be prosecuted by the two-count superseding indictment. Depending on whether, under a correct interpretation of New York law, the initial felony complaint could be considered an "accusatory instrument" that was "disposed of" by Rampersaud's guilty plea, there is a possibility that the $77,199 would have included losses from the four dismissed counts. We take no position on whether New York law could support such a conclusion, and do not rely on it to justify the disposition of this appeal.

[6] In pointing out the insufficiency of the BIA's reasoning, we leave open the question whether the record evidence, properly analyzed, could support a finding that more than $10,000 in losses was attributable to the insurance fraud.

14

In spite of the lack of evidence as to how the $77,199 was calculated, the Government argues that it was nonetheless Rampersaud's burden to submit evidence showing why the $77,199 restitution did *not* accurately reflect the amount of loss attributable to the insurance fraud. The Government points to *Nijhawan*'s statement that "[i]n the absence of conflicting evidence," a restitution order (coupled with the petitioner's stipulations at sentencing) can be sufficient to establish victim losses from a fraud offense in excess of $10,000. 557 U.S. at 42–43. The Government also cites several unpublished decisions of our court in which we approved of the IJ and BIA's reliance on restitution orders to find the $10,000 threshold satisfied. *See* Resp. Br. at 21–23 (citing *Taher*, 726 F. App'x at 857; *Doe*, 709 F. App'x at 66–67; *Relvas v. Holder*, 382 F. App'x 51, 53–54 (2d Cir. 2010) (summary order)). Relying on these cases, the Government argues that Rampersaud bore the burden of "undermin[ing] the [IJ's] reliance on the restitution order and preclud[ing] the Government from satisfying its burden of proof." Resp. Br. at 21–22.[7]

---

[7] This was essentially the reasoning of the IJ and the BIA. The IJ found that the restitution award established that Rampersaud met the $10,000 threshold because Rampersaud "had ample opportunity to provide evidence of the amount of loss that disputed that figure, yet did not submit any," giving the IJ "no basis for challenging the [Government's] evidence." C.A.R. at 54. The BIA

15

This argument is not persuasive. It is of course true that a restitution award can, in some cases, reliably establish loss to the victims from a fraud offense. *See Nijhawan*, 557 U.S. at 42–43. But that principle is inapposite here, where the restitution amount covered two separate counts of conviction and where the Government did not point to any evidence that more than $10,000 of the restitution was attributable specifically to the relevant offense involving fraud or deceit. Indeed, none of the cases on which the Government relies involved the type of scenario where a restitution order was no more likely attributable to the relevant count of conviction than to another count, and where the agency did not discuss any additional record evidence supporting its conclusion.[8]

---

similarly held that "in the absence of evidence to show that the restitution amount is not reliable, the [Government] has established that the loss involved more than $10,000." C.A.R. at 4.

[8] For example, in *Taher*, the petitioner was ordered to pay $120,000 in restitution for a single count of conspiracy to commit food-stamp fraud. 726 F. App'x at 857. In *Relvas*, the petitioner was ordered to pay more than $82,000 in restitution for a single count of conspiracy to defraud the United States. 382 F. App'x at 52. In *Doe*, although the petitioner's $11,115 restitution order covered his conviction for two separate counts—conspiracy to commit wire fraud and identity theft—the offenses were found to be part of a common "cellphone 'cloning' scheme," and the indictment to which Doe pleaded guilty alleged losses specifically from the wire fraud conspiracy count in excess of $108,000. 709 F. App'x at 66.

Under the circumstances of this case, it was error for the BIA to find that Rampersaud is an aggravated felon based solely on the total amount of restitution. *See In re Babaisakov*, 24 I. & N. Dec. 306, 319 (B.I.A. 2007) ("[R]estitution orders can be sufficient evidence of loss to the victim in certain cases, *but they must be assessed with an eye to what losses are covered . . . .*" (emphasis added)). Absent evidence that the restitution order involved more than $10,000 in losses specifically from the insurance fraud count of conviction, the burden was not on Rampersaud to produce evidence to rebut an inference that had not been established. The burden was on the Government, in the first instance, to show by "clear and convincing evidence" that Rampersaud was removable, 8 U.S.C. § 1229a(c)(3)(A), which required it to show that Rampersaud's fraud offense resulted in losses exceeding $10,000, *Nijhawan*, 557 U.S. at 42. Although the Government may on remand be able to satisfy that burden, we cannot now conclude that it has done so.

If the evidence showed that the insurance fraud and the grand larceny charges were part of "a single criminal transaction," Resp. Br. at 21 n.5, the outcome here might well be different. In such a case, any monetary losses attributable to the grand larceny conviction arguably would also have been

17

tied to the insurance fraud offense, as all the charges would have been predicated on the same criminal conduct. In that event, the $77,199 restitution order covering both convictions might be a reliable indicator that the insurance fraud caused more than $10,000 in victim losses, despite the lack of clarity as to how the restitution was calculated. But as noted above, *see supra* note 2, the Government has not demonstrated that all the charged offenses were part of the same criminal scheme. In the absence of evidence as to how the restitution order was calculated by the Westchester court, the restitution order by itself does not show that Rampersaud's insurance fraud caused losses exceeding $10,000.

## CONCLUSION

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the cause is REMANDED for proceedings consistent with this opinion.[9]

---

[9] Because we vacate the BIA's decision and remand on the basis that the BIA failed to ascertain whether Rampersaud's insurance fraud, on its own, caused losses in excess of $10,000, we need not reach any of Rampersaud's additional challenges to removability.

18