Mody SAMBA, Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY, Respondent.

No. 06–3236–ag.

United States Court of Appeals, Second Circuit.

May 22, 2007.

**54**

Theodore Vialet, New York, New York, for Petitioner.

Reginald I. Lloyd, United States Attorney for the District of South Carolina, Frances C. Trapp, Assistant United States Attorney, Columbia, South Carolina, for Respondent.

PRESENT: Hon. WILFRED FEINBERG, Hon. GUIDO CALABRESI, Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Petitioner Mody Samba, a native and citizen of Mauritania, seeks review of a June 15, 2006 order of the BIA affirming the February 3, 2005 decision of Immigration Judge ("IJ") William Van Wyke, denying petitioner's application for asylum, withholding of removal, and CAT relief. *In re Mody Samba,* No. A 97 753 103 (B.I.A. June 15, 2006), *aff'g* No. 97 753 103 (Immig. Ct. N.Y. City Feb. 3, 2005). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When, as here, the BIA affirms the decision of the IJ without opinion, this Court reviews the decision of the IJ directly. *See Secaida–Rosales v. I.N.S.,* 331 F.3d 297, 305 (2d Cir.2003). Because Samba failed to exhaust his claims for withholding of removal and CAT relief before the BIA, we dismiss those claims for lack of jurisdiction. *See Karaj v. Gonzales,* 462 F.3d 113, 119 (2d Cir.2006).

We review the factual findings of the IJ regarding the asylum claim under the substantial evidence standard. *See Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). When an IJ rejects an applicant's testimony based on an adverse credibility determination, the IJ must provide "specific, cogent" reasons for doing so. *Secaida–Rosales,* 331 F.3d at 307 (citation and internal quotation marks omitted). Those reasons must bear a legitimate nex-

us to the finding, and must be "valid grounds" for disregarding an applicant's testimony. *See id.* (citation and internal quotation marks omitted). While the IJ is in the best position to make a credibility determination, we have held that "[a]dverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." *Id.* (citation and internal quotations omitted); *see also Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004) ("[W]e will reverse where the adverse credibility determination is based upon speculation or upon an incorrect analysis of the testimony.").

Reviewing the reasoning of the IJ here, we find that, while the IJ's handling of the hearing was commendable, he based his adverse credibility determinations on perceived inconsistencies that either resulted from excess speculation or inappropriate conclusions, or were not substantial enough to defeat the petitioner's claim.

■ First, the IJ placed a great deal of emphasis on the fact that Samba had not offered any documentary proof of the protests, which the IJ viewed as notable because of his "expectation that a major demonstration by at least a thousand university students would probably make the news." He based this on his determination "that BBC and Amnesty International do take notice of demonstrations where government opponents are arrested by the police." The IJ's conclusion that there would have been news coverage of the demonstrations identified by Samba if they had actually occurred simply because some other similar demonstrations had received such coverage is purely speculative.

■ Second, the IJ's adverse credibility determination also substantially relies on the IJ's doubt as to Samba's explanation for why he was singled out for persecution. Samba consistently claimed that he was targeted even though he was not an activist because he was black, intelligent, and had done well at the university. The IJ's rejection of this reason for being targeted is based solely on his own conjecture.

■ Third, the IJ found that Samba's testimony regarding the number of other people arrested in March 2001 was inconsistent. Samba first testified that "many other students were arrested." When later pressed on the specific number, he said he was not sure but he thought "about eight people" were arrested. Given the vague meaning of "many," there is nothing inconsistent about these two statements. Subsequently, Samba stated that, in addition to the eight students he had mentioned, two students leaders were also arrested, but he made clear that those students were not taken to the jail (rather, they were beaten and then released). Because the students leaders were not brought to jail, there was nothing inconsistent about Samba's earlier statement that eight students had been arrested at the protest, which clearly came in the context of a discussion of students who had been arrested *and* imprisoned.

■ Fourth, the IJ concluded that Samba equivocated about how the police knew him. But there was nothing materially inconsistent or equivocal about Samba's testimony on this point. Petitioner consistently testified that the police knew him because he was black, intelligent, and had been a good student at the university. Furthermore, he never testified that the police did not know his name. The only discrepancy came when Samba stated, in response to a question, that the police called him by his name before they arrested him. But very shortly thereafter, petitioner made clear that he meant that the police said his name soon after they arrested him, not before. This is, at best, a

minor discrepancy that is insufficient to support an adverse credibility finding. *See Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000).[1] Furthermore, the fact that Samba "knew some of [the police officers] by face but did not know them by name," does not in any way contradict Samba's other statements that the *police officers* knew who *Samba* was by name.

Fifth, the IJ found it implausible that Samba had difficulty returning from the Ivory Coast given that the government had no reason to believe Samba was an activist. But, as petitioner persuasively argues, the IJ "didn't cite any specific inconsistency or documentation for his assertion, other than his belief that the Mauritanian government would have no interest in the petitioner since he wasn't a political leader or politically active. However, since the petitioner had been previously arrested and detained after a student demonstration in March, 2001 and he had been a black member of the Nouakchott University student union[,] the Mauritanian government could reasonably view him as a threat." Furthermore, the IJ's conclusion that the government would only have stopped the petitioner if it had a reason to think of him as politically active is based on nothing more than speculation.

Sixth, the IJ found Samba's account of how he obtained the government stamp for his passport implausible. In his decision, the IJ stated that Samba's account was "hypothetical," that Samba "did not say he got help from corrupt police officers," and that "it's as if all of this came as an afterthought." But Samba testified quite clearly about his specific experiences in acquiring the stamp. Petitioner stated that he personally paid a police officer, who gave him a date to come to the airport and helped him get on the airplane. Samba even identified by name the police officer who helped him.

Finally, the IJ found it implausible that the government would give Samba a passport, given that the passport was issued only a few weeks after petitioner's first detention. The IJ has given no reason, beyond his own speculation, for why the passport would not have issued, particularly in light of Samba's testimony that he had applied for the passport before the March 2001 protests.

In sum, we find that the perceived inconsistencies pointed to by the IJ were not supported by substantial evidence. Unlike the agency decision in *Siewe v. Gonzales*, 480 F.3d 160 (2d Cir.2007), the IJ's "inferential leap[s]" here were not "tethered to the evidentiary record." *Id.* at 169.

This Court may affirm an adverse credibility finding "even when the IJ's reasoning is deficient in certain respects ... [when] we can state with confidence that the same decision would be made if we were to remand." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 335 (2d Cir.2006). In the petition before us, however, it is difficult to determine whether the IJ would have rejected the asylum claim had he not based his adverse credibility determination on inappropriate factors.[2] Accordingly, with respect to the

---

1. In fact, this alleged discrepancy may well be related to translation difficulties, which the transcript indicates occurred at other parts of the hearing.

2. Indeed, the IJ noted that "[t]he situation in Mauritania is clearly very difficult for people of the respondent's background," "[t]he [Mauritanian] government is described, by the State Department, as having a poor human rights record, and as shown by the country conditions evidence to have a very low tolerance for any kind of dissent," and "slavery, while outlawed three times in Mauritania, is still an issue and that the people who are subject to slavery are namely black Mauritanians, including those of the respondent's ethnic background."

asylum claim, we remand the petition to the IJ for such a finding. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 401 (2d Cir.2005).

For the foregoing reasons, the petition for review is GRANTED in part and DISMISSED in part, and the case is REMANDED for further proceedings.