**MEI ZHEN HUANG, Chun Quing Liu, Petitioners,**

v.

**Michael B. MUKASEY,\* Attorney General, Respondent.**

**Nos. 04–2061–ag(L), 04–2142–ag(Con).**

United States Court of Appeals, Second Circuit.

Dec. 4, 2007.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

G. Victoria Calle, Calle & Lee, LLP, New York, NY, for Petitioner.

John Battaglia, Assistant United States Attorney (Craig Oswald, Melissa Childs, Assistant United States Attorneys, on the brief), for Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, Chicago, IL, for Respondent.

PRESENT: Hon. PIERRE N. LEVAL, Hon. SONIA SOTOMAYOR and Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Petitioners Mei Zhen Huang ("Huang") and Chun Qing Liu ("Liu") seek review of the BIA's decision affirming Immigration Judge ("IJ") Alan Vomacka's denial of their applications for relief from removal. *In re Mei Zhen Huang,* No. A 79 793 266 (B.I.A. Mar. 26, 2004), *aff'g* Nos. A 79 793 266, A 78 961 703 (Immig. Ct. N.Y. City Jan. 3, 2003). We assume familiarity with the underlying facts, procedural history, and issues on appeal.

Huang and Liu, who are natives of the Fujian province in China, testified before the IJ in support of Huang's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Huang claimed that she had been subjected to a forced abortion in China, and that she would be imprisoned and tortured upon her return for illegally leaving the country. Liu sought derivative asylum under Huang's application.[1]

The IJ denied relief, concluding that Petitioners' claims were not credible and

---

1. Liu originally submitted his own application for asylum, alleging that he feared future persecution in China due to his Christian beliefs and practices. The IJ denied relief on the ground that Liu's claims were insufficiently supported by factual allegations, then consolidated Liu's application with Huang's.

that the application was frivolous. The BIA affirmed the adverse credibility finding, emphasizing certain inconsistencies in Petitioners' testimony, but reversed the finding of frivolity.

"Where, as here, the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions—or, more precisely, we review the IJ's decision including the portions not explicitly discussed by the BIA." *Guan v. Gonzales,* 432 F.3d 391, 394 (2d Cir.2005) (per curiam). "We review an IJ's factual findings, including adverse credibility determinations, under the substantial evidence standard," *id.,* and afford "particular deference to the credibility determinations of the IJ," *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997). However, we will vacate and remand for reconsideration if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004). An adverse credibility determination must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the finding. *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted).

■ Here, the IJ committed numerous errors in reaching his adverse credibility determination. Tainting the IJ's entire decision was his initial musing that Petitioners had a strong motive to "give false testimony or exaggerated testimony" due to their financial indebtedness to family and friends who helped fund the smuggling of Petitioners into the United States. The IJ's belief that Petitioners would lie on this basis cannot properly support an adverse credibility finding—and indeed, threatens it—because the existence of an economic motive for remaining in the United States is not necessarily inconsistent with an application for asylum.[2]

The IJ also improperly made suppositions about conditions in China that were not supported by the record. For example, he expressed skepticism that Huang had never had "any other involvement with or contact with" birth control officials in China, including mandatory gynecological examinations, despite admitting that "I don't actually know if such exams are held or required in China." The IJ also found it implausible that government officials would take Huang away to undergo a forced abortion without first consulting her parents, and that the policy of forced abortions would not be well-publicized enough to alert Petitioners to the risks of going to the marriage office and confessing her pregnancy.[3] These conclusions were conjectural, speculative ones, which cannot support an adverse credibility determination. *See Cao He Lin,* 428 F.3d at 405.

**2.** We note that this is not the first time we are remanding a decision by IJ Vomacka, in part, on this ground. *See Gui Lin v. BIA,* 200 Fed.Appx. 49 (2d Cir.2006).

**3.** The IJ stated: "Now this I believe would be equivalent to saying that there's some criminal offense in a state in the United States where the government may impose a death penalty without trial once they know that someone committed the crime, but people in the community don't realize the danger of committing such a crime. I believe that this doesn't make any sense as a matter of common sense and I believe that from the government's point of view, the idea is not to force young women to have abortions, but to limit the number of children who are born and the most effective way to limit the number of children who are born is to publicize and spread the word about whatever restrictions or policies or views the government has about birth control as widely as possible."

The IJ also relied on what he perceived to be a discrepancy between Liu's testimony and a statement in his father's affidavit concerning the timing of when Chinese officials allegedly came to the father's house looking for Liu. The discrepancy does not exist, however, as the father's affidavit puts no time frame on when officials allegedly came to his house.

The IJ further relied on certain seeming discrepancies in the testimony offered by Huang and Liu, including: apparent disagreement between Petitioners as to whether Liu was with Huang when she discovered she was pregnant; the year Huang and Liu first became "romantically involved" (although the IJ did not weight this heavily given the ambiguity of the subject); and the details of Liu's employment history. As an initial matter, the first of these "inconsistencies" is not clear from the record. Huang never specifically testified that Liu accompanied her to her pregnancy test, stating only, "we went to a private clinic to have the examination." Liu's testimony, in turn, did not reflect any confusion over whether he was at the clinic; he stated that Huang either went alone or with his mother. Huang was never asked to clarify whether "we" included Liu, Liu's mother, or someone else. Therefore, the IJ's finding of a discrepancy as to this particular detail was incorrect.[4]

▮ To the extent that the other discrepancies relied upon by the IJ are supported in the record, we cannot state with confidence that, in light of the errors discussed above, the result would be the same on remand. *Cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 335 (2d Cir.2006). Thus, a remand to the agency for reconsideration of Petitioners' asylum and withholding of removal claims would not be futile. We do not remand on Huang's CAT claim, however. Petitioners failed to exhaust administrative remedies with respect to this claim by not raising it on appeal to the BIA. *See* 8 U.S.C. § 1252(d); *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir.2006). In any event, the IJ reasonably determined that there was insufficient proof in the record to demonstrate that Petitioners more likely than not would be tortured upon their return to China. *See Mu Xiang Lin v. U.S. Dep't of Justice*, 432 F.3d 156, 159–60 (2d Cir.2005).

Accordingly, the petitions for review are hereby GRANTED, and the case is REMANDED for further proceedings on Petitioner's claims for asylum and withholding relief consistent with this order. Any pending motion for a stay of removal is DENIED as moot.

---

4. In support of the IJ's adverse credibility finding, the government also asks us to consider the fact that Liu, in his initial asylum application based on alleged religious persecution, did not make any mention of Huang, much less her alleged forced abortion. Although the IJ noted these omissions from Liu's original application, it is not clear whether or to what extent the IJ relied upon the omissions in denying Huang's asylum application. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (limiting judicial review to "[t]he grounds upon which ... the record discloses that [the agency's] action was based"). As the IJ himself noted, reference to Huang's alleged problems in China need not have been included in Liu's initial asylum application, which pertained to alleged religious persecution. For this same reason, the omissions in Liu's original application are minor or irrelevant to Huang's application.