06-5616-ag
Kulwinder Singh v. U.S. Dep't of Homeland Sec., et al

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2007

(Submitted: December 5, 2007

Decided: February 29, 2008
Amended: May 12, 2008)

Docket No. 06-5616-ag

———————————

KULWINDER SINGH,

*Petitioner,*

—v.—

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES DEPARTMENT OF JUSTICE, &
MICHAEL B. MUKASEY,* UNITED STATES ATTORNEY GENERAL

*Respondents.*

———————————

B e f o r e :

STRAUB and HALL, *Circuit Judges*, and CHARLES S. HAIGHT, JR., *District Judge.***

———————————

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

** The Honorable Charles S. Haight, Jr., District Judge for the Southern District of New York, sitting by designation.

Kulwinder Singh petitions for review of a decision of the Board of Immigration Appeals affirming the decision of an Immigration Judge (1) ordering Singh removed on the ground that he had committed a crime of moral turpitude, and (2) denying Singh's application for cancellation of removal. Because we find that the agency did not err in finding that the government satisfied its burden to present "clear, unequivocal, and convincing evidence" that Singh was convicted of a crime of moral turpitude and that the Immigration Judge did not exceed his allowable discretion in denying a continuance, the petition for review is DISMISSED in part and DENIED in part.

———————

WARREN S. HECHT, Forest Hills, New York, *for Petitioner*.

JAMES E. GRIMES, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division (Peter D. Keisler, Assistant Attorney General, Civil Division; Linda S. Wernery, Assistant Director, *on the brief*), U.S. Department of Justice, Washington, D.C., *for Respondents*.

———————

STRAUB, Circuit Judge:

Petitioner Kulwinder Singh challenges the November 15, 2006 decision of the Board of Immigration Appeals ("BIA") affirming without opinion the May 16, 2005 decision of Immigration Judge ("IJ") Philip L. Morace (1) ordering Singh removed on the ground that he had committed a crime of moral turpitude, and (2) denying Singh's application for cancellation of removal. *In re Kulwinder Singh*, No. A 74 957 794 (B.I.A. Nov. 15, 2006), *aff'g* No. A 74 957 794 (Immig. Ct. N.Y. City May 16, 2005).

This case requires us to determine whether the IJ erroneously concluded that the government had presented clear and convincing evidence that petitioner Kulwinder Singh had been convicted of second degree assault under New York Penal Law ("N.Y.P.L.") § 120.05(1), which the IJ determined was a crime of moral turpitude and thus a removable offense. Singh argues (1) that the government should be "bound" to the precise allegations contained in his

Notice to Appear ("NTA"), which did not specify a subsection of N.Y.P.L. § 120.05; (2) that evidence upon which the IJ relied in determining that Singh had been convicted under § 120.05(1) was not clear and convincing because it was unreliable and contradicted by other evidence; and (3) that the IJ exceeded his allowable discretion in denying his motion for a continuance. For the reasons stated below, we DISMISS in part and DENY in part the petition for review.

## FACTS AND PROCEDURAL BACKGROUND

Singh, a citizen of India, testified before the IJ that he arrived in the United States in 1992. According to his testimony, Singh discarded his passport while en route to the United States, and upon arrival, used a false name before Immigration and Naturalization Service ("INS") officials.[1] Singh testified that the INS officials temporarily released him but asked him to return to the immigration office at the airport, which he did not do. Singh further testified that INS authorities gave him paperwork at this time but he later lost it. On January 25, 1996, Singh applied to adjust his immigration status to lawful permanent resident, and the INS granted Singh's application on May 4, 1996.

On November 13, 2001, Singh had an argument with a co-worker in Queens, New York, in which Singh struck the individual with a stick. According to Singh, the co-worker then threatened to inform the police about the incident unless Singh paid him, which Singh refused to do. On November 17, 2001, Singh was arrested in connection with the altercation and was

---

[1] On March 1, 2003, the INS was reconstituted as the Bureau of Immigration and Customs Enforcement ("ICE") and the Bureau of U.S. Citizenship and Immigration Services ("BCIS"), both within the Department of Homeland Security ("DHS"). *See Monter v. Gonzales*, 430 F.3d 546, 548 n.1 (2d Cir. 2005).

arraigned on several counts.[2] On June 10, 2002, after a short visit to India, Singh applied for readmission to the United States.[3] On October 2, 2002, Singh pled guilty to, and was convicted of, one count of second degree assault in violation of N.Y.P.L. § 120.05. Singh and the government now dispute whether Singh was convicted under a specific subsection of N.Y.P.L. § 120.05, and, if so, which subsection. Singh was sentenced to one day of incarceration and five years of probation on November 6, 2002.

On February 28, 2003, Singh was served with an NTA for a removal proceeding. The NTA alleged that Singh had applied for admission to the United States on June 10, 2002 as a returning lawful permanent resident. In addition, the NTA alleged that Singh was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I)[4] due to his November 6, 2002 conviction under N.Y.P.L. §120.05. The NTA did not specify any subsection of N.Y.P.L. §120.05.[5]

On May 16, 2005, the IJ held a removal hearing for Singh. During the course of the proceedings, the IJ admitted as evidence, *inter alia*: (1) a document entitled "Certificate of Disposition," issued by the Supreme Court of the State of New York, County of Queens, which

---

[2]     According to his post-conviction rap sheet, these counts were the following: two counts of second degree assault, N.Y.P.L. §§ 120.05(1), (2); one count of third degree assault, N.Y.P.L. § 120.00(1); one count of fourth degree criminal possession of a weapon, N.Y.P.L. § 265.01(2); and one count of second degree harassment, N.Y.P.L. § 240.26(1).

[3]     Even though Singh was a lawful permanent resident, he was "regarded as seeking an admission into the United States" pursuant to 8 U.S.C. § 1101(a)(13)(C)(v). Singh has not challenged this determination.

[4]     The relevant statute provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I).

[5]     Although, as stated in the NTA, Singh was convicted of his offense after he had applied for admission, Singh does not rely on this fact as a possible ground for challenging the inadmissibility ruling. Accordingly, any argument to that effect is waived, and we do not address it. *See Thibodeau v. Portuondo*, 486 F.3d 61, 66 n.4 (2d Cir. 2007).

4

stated that Singh had been convicted of assault in the second degree in violation of N.Y.P.L. § 120.05 on October 2, 2002; (2) a document entitled "Conditions of Probation," signed by the state court clerk and by Singh, which was dated November 6, 2002 and stated that Singh had been convicted under subsection (1) of N.Y.P.L. § 120.05; (3) Singh's "rap sheets," which had been maintained by the Division of Criminal Justice Services by the State of New York and stated that Singh had been charged with several crimes but had only been convicted under N.Y.P.L. § 120.05(1); and (4) several protection orders — entered against Singh after his arrest but prior to his conviction and signed by a different judge from the sentencing judge — that stated that Singh had been charged with violating N.Y.P.L. § 120.05(2) and did not refer to any other crime.

At the hearing before the IJ, Singh's counsel informed the IJ that he had filed a request under the Freedom of Information Act ("FOIA") to obtain documents from the government that might serve as evidence of Singh's first arrival in the United States in 1992. Singh's counsel stated that he intended to argue — if and when he received the documents — that Singh was eligible for cancellation of removal because he had "resided in the United States continuously for seven years after having been admitted in any status" prior to having committed the offense, a prerequisite to such relief. *See* 8 U.S.C. §§ 1229b(a)(2), (d)(1).[6] The government objected to the request for a continuance, arguing that there would be no documentation under the name Kulwinder Singh because, as Singh testified, he had used a false name and discarded his passport

---

[6]     8 U.S.C. § 1229b(a)(2) provides, in relevant part: "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(d)(1) provides, in relevant part: "For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear . . . or . . . when the alien has committed an offense referred to in section 1182(a)(2) of this title . . .  whichever is earliest."

5

upon his arrival in 1992. The IJ effectively denied the request, albeit without explanation, when he rendered his final decision and announced that Singh's final hearing was closed.

In his final decision, the IJ reviewed the evidence in the record and found that Singh had been convicted of second degree assault under N.Y.P.L. § 120.05(1). The IJ concluded that N.Y.P.L. § 120.05(1) was a crime of moral turpitude for the purpose of removal proceedings. As a result, the IJ held Singh to be inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) and ordered him removed. As to Singh's eligibility for cancellation of removal, the IJ concluded that there was insufficient evidence of Singh's 1992 entry into the United States to demonstrate that he was "admitted in any status," and therefore the relevant seven-year period did not begin to run until Singh was admitted as a lawful permanent resident on May 4, 1996. As Singh committed his offense less than seven years later in November 2001, the IJ concluded that Singh was not eligible for cancellation for removal. The IJ further found Singh ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h)[7] because the NTA was served on Singh in February 2003, which was also less than seven years after he was admitted as a permanent resident in May 1996.

Singh appealed the IJ's decision to the BIA. On November 15, 2006, the BIA affirmed the IJ's decision without opinion. This appeal timely followed.

**DISCUSSION**

---

[7]     8 U.S.C. § 1182(h) provides, in relevant part: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States."

In his petition for review, Singh argues that the IJ erred in three primary respects. First, Singh argues that the agency was precluded from finding that he was convicted under N.Y.P.L. § 120.05(1) because the NTA did not specify a subsection. Second, Singh contends that the IJ erroneously concluded that the government had shown by clear and convincing evidence that he had been convicted of a crime of moral turpitude. Third, Singh argues that the IJ exceeded his allowable discretion in refusing to adjourn the hearing to allow Singh to produce additional documents in support of cancellation of removal. We address these arguments in turn.[8]

***1. Lack of Specificity in the NTA***

Singh first argues that the government is "bound" by the precise allegations used in the NTA he received regarding his removal proceedings and that, absent an amendment to the NTA in writing, the IJ was precluded from finding that Singh was convicted of N.Y.P.L. § 120.05(1). He also argues that the lack of specificity in the NTA violated his Due Process rights under the Fifth Amendment to the United States Constitution. In response, the government argues that Singh has not exhausted his administrative remedies on these claims because he did not raise them before the BIA.

If Singh has failed to exhaust all of his administrative remedies, then we lack jurisdiction to review this claim. *See Karaj v. Gonzales*, 462 F.3d 113, 117 (2d Cir. 2006). Although Singh's brief to the BIA mentions that the NTA was "improvidently issued or at best defective or insufficient on its face," this point was part of Singh's second argument, below, that the evidence presented by the government that Singh had been convicted of a crime of moral turpitude did not rise to the level of clear and convincing. Singh's BIA brief is entirely devoid of

---

[8] Singh does not challenge the IJ's determination that N.Y.P.L. § 120.05(1) constitutes a crime of moral turpitude. Accordingly, he has waived any such argument, and we do not consider the question. *See Thibodeau*, 486 F.3d at 66 n.4.

7

reference to a due process violation. The reference to the NTA in his BIA brief was thus not adequate to put the BIA on notice of the impermissible amendment or due process arguments that Singh now offers. *Cf. Johnson v. Ashcroft*, 378 F.3d 164, 170 n.7 (2d Cir. 2004) (finding that where the substance of petitioner's argument was raised below, petitioner exhausted the claim). As a result, we conclude that Singh did not exhaust his administrative remedies on these claims in appealing the IJ's decision to the BIA, and we therefore lack jurisdiction to review them. *See Karaj*, 462 F.3d at 117. Accordingly, we dismiss this portion of Singh's petition.

### 2. The IJ's Finding that Singh Committed a Crime of Moral Turpitude

Second, Singh argues that the IJ erred in concluding that the government had demonstrated by clear and convincing evidence that Singh had been convicted under N.Y.P.L. § 120.05(1). N.Y.P.L. § 120.05 may be considered a "divisible statute" because we have held that at least one of its subsections is not a crime of moral turpitude. *See Gill v. INS*, 420 F.3d 82, 90-91 (2d Cir. 2005) (holding that N.Y.P.L. § 120.05(4) is not a crime of moral turpitude because it requires only that the defendant acted with criminal recklessness instead of specific intent). *See also Dickson v. Ashcroft*, 346 F.3d 44, 48 (2d Cir. 2003) (defining a "divisible statute" as one that "encompasses diverse classes of criminal acts — some of which would categorically be grounds for removal and others of which would not"). Accordingly, the IJ had to determine whether Singh was convicted of a specific subsection of § 120.05, and if so, whether that subsection constituted a crime of moral turpitude.

Because of Singh's status as a permanent resident, the government bears the burden of proof, which it could only meet "by adducing 'clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.'" *Francis v. Gonzales*, 442 F.3d 131, 138 (2d Cir. 2006) (quoting *Woodby v. INS*, 385 U.S. 276 (1966)). In this context, we review factual

findings by an IJ under a "more demanding" variation of the "substantial evidence" standard codified in 8 U.S.C. § 1252(b)(4)(B). *Id.* Applying this standard, we may grant Singh's petition only if we "find that any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence" of Singh's conviction of a crime of moral turpitude. *Id.* at 138-39. As proof of conviction, the IJ may properly rely on:

> (i) An official record of judgment and conviction.
>
> (ii) An official record of plea, verdict, and sentence.
>
> . . .
>
> (vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

8 U.S.C. § 1229a(c)(3)(B); *see also Wala v. Mukasey*, 511 F.3d 102, 107 (2d Cir. 2007) ("In reviewing a conviction under a divisible statute, we may refer to the record of conviction to ascertain whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses." (internal quotation marks omitted)). In addition, we have held that the list of documents enumerated in § 1229a(c)(3)(B) is non-exhaustive and thus does not prohibit the admission of other types of documents if they are sufficiently "probative" of the kind of conviction at issue. *See Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116, 132 (2d Cir. 2007) (holding that while a restitution order may "offer proof that a conviction *exists*," an IJ may not rely on it "to establish that the underlying facts of that conviction constitute a removable offense"); *Francis*, 442 F.3d at 142-43 (holding that while applicable regulations allow an IJ to consider a police "rap sheet" referring to a specific conviction, an IJ may not deem such a report conclusive proof of conviction of a removable offense as rap sheets "lack the necessary information to describe the full record of conviction and do not necessarily emanate from a neutral, reliable source"); *see also Dickson*, 346 F.3d at 53-55 (holding that an IJ may not rely

9

upon the "narrative statements of facts" section of an alien's pre-sentence report to determine whether the alien had been convicted of a removable offense).

Here, the IJ relied upon three documents in evidence to conclude that Singh had been convicted of second degree assault under N.Y.P.L. § 120.05(1) – a crime that Singh does not challenge here as being one of moral turpitude for purposes of his removal proceedings. These documents were: (1) the "Conditions of Probation"; (2) the "Certificate of Disposition"; and (3) Singh's "rap sheets." On appeal, Singh attacks the reliability of each of these documents. We conclude that the IJ did not err in relying on these three documents together to find that Singh was convicted of N.Y.P.L. § 120.05(1).

First, the Conditions of Probation document states that Singh had been convicted of violating "120.05-1" and defines this as a felony conviction of assault in the second degree. The document is dated November 6, 2002, the date of Singh's sentence, and was signed by both Singh and a court clerk. Although Singh concedes that the document is "some proof that [he] pled to assault under subsection one," he argues it is not very probative because he, not the government, submitted the document, and it was not signed by the judge himself. Singh offers no authority to support the proposition that the relevance and weight of evidence should somehow depend on which party offers it into evidence and we see no reason to so hold. Moreover, the Conditions of Probation, which was signed by a court official, clearly falls into the categories of "[a]n official record of . . . sentence," as well as "[a]ny document or record prepared by, or under the direction of, the court in which the conviction was entered." 8 U.S.C. § 1229a(c)(3)(B)(ii), (vi). *Cf. Dulal-Whiteway*, 501 F.3d at 130 (concluding that a restitution order is a "record of sentence" within the meaning of 8 U.S.C. § 1229a(c)(3)(B)(ii)). Thus, we find that the IJ properly relied on the Conditions of Probation in determining that there was clear

10

and convincing evidence that Singh was convicted under § 120.05(1).

Second, the Certificate of Disposition, like the NTA Singh received, states that he was convicted of N.Y.P.L. § 120.05 and does not specify a subsection of that statute. Singh argues that this undermined the evidence on which the IJ relied. The IJ recognized this lack of specificity in the Certificate and concluded that the document was nonetheless consistent with other evidence in the record. Moreover, the IJ considered additional evidence to make the determination that Singh had been convicted under N.Y.P.L. § 120.05(1), and we have held that such consideration is proper in this context. *See Francis*, 442 F.3d at 142-43; *Dulal-Whiteway*, 501 F.3d at 132.

Third, like the Conditions of Probation, Singh's post-conviction rap sheet — the remaining piece of evidence upon which the IJ relied — states explicitly that Singh was convicted under § 120.05(1). Singh argues that the rap sheet "contains information [that] is clearly wrong." Indeed, this document states that Singh was born in Indiana, not India, and that his race is "Oriental". We have previously held that an IJ errs in relying on a rap sheet as *conclusive* proof that an alien has been convicted of a particular crime for the purpose of the alien's removal proceedings. *See Francis*, 442 F.3d at 143 (emphasis added). However, *Francis* also held that an IJ may admit a rap sheet as partial evidence of such a conviction. *Id.* at 142-43 (concluding that 8 U.S.C. § 1229a(c)(3)(B) provides which documents "constitute conclusive proof of conviction" but does not prohibit the admission of a rap sheet as "some evidence of a criminal conviction").

In conclusion, it was permissible for the IJ to rely on these three documents in combination to determine that the government satisfied its burden of proving by clear and

11

convincing evidence that Singh had been convicted of a crime of moral turpitude.[9] Upon review of the record, we cannot conclude, as granting Singh's petition on this ground would require, that "any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence" of Singh's conviction of a crime of moral turpitude.[10] *Id.* at 138-39.

### 3. Denial of Singh's Request for a Continuance

Third and finally, Singh argues that the IJ exceeded his allowable discretion in refusing to grant a continuance so that he could continue to pursue his FOIA request regarding his original entry into the United States in 1992. In response to Singh's continuance request, the government argued that there would likely not be any documents regarding Singh's 1992 entry because, as Singh admitted during his testimony, he had used a false name and discarded his passport en route.

---

[9] Although not essential to the holding of this case, we note that Singh's record in Queens County Supreme Court also contains the following documents: (1) a copy of the indictment returned against Singh, which charges Singh with two counts of assault in the second degree under N.Y.P.L. §§ 120.05(1) and (2) and one count of criminal possession of a weapon in the fourth degree under N.Y.P.L. § 265.01-2; (2) a document entitled "Court Order for Investigation and Report" signed by the court clerk and stating that Singh had been convicted of violating § 120.05(1); (3) a document entitled "Sentence & Commitment" also signed by the court clerk and stating that Singh had been convicted of violating § 120.05(1); (4) the Supreme Court docket sheet, which states that Singh was convicted of violating § 120.05(1); and (5) a transcript of the plea colloquy in Singh's case, which only refers to § 120.05(1). Although we conclude — even in the absence of these documents — that the IJ did not err in concluding that Singh was convicted under subsection (1), because the facts reflected in these documents are not "subject to reasonable dispute," we take judicial notice of the fact that, on their face, the documents state that Singh was convicted under subsection (1). Federal Rule of Evidence 201(b). *Cf. Latifi v. Gonzales*, 430 F.3d 103, 106 n.1 (2d Cir. 2005) (per curiam).

[10] Singh also argues that several protection orders, which were signed by a judge and show that he was charged with N.Y.P.L. § 120.05(2), undermine the IJ's finding that Singh had been convicted under § 120.05(1). While these orders are evidence of the crimes with which Singh had been *charged*, they do not dispose of the question of those crime(s) under which Singh had been *convicted* because the orders were entered before Singh pled guilty. Moreover, there is no indication that these orders must list each crime charged.

12

Assuming without deciding that we have statutory jurisdiction to review the IJ's denial of Singh's continuance request, we conclude that his arguments on this issue are without merit. *See Ivanishvilli v. U.S. Dep't of Justice*, 433 F.3d 332, 338 n.2 (2d Cir. 2006) ("Our assumption of jurisdiction to consider first the merits is not barred where the jurisdictional constraints are imposed by statute, not the Constitution, and where the jurisdictional issues are complex and the substance of the claim is, as here, plainly without merit."). We review such a denial for an excess of allowable discretion. *See Pedreros v. Keisler*, 503 F.3d 162, 164 (2d Cir. 2007) (per curiam). An IJ may grant a continuance for "good cause shown." 8 C.F.R. § 1003.29. In addition, "IJs are accorded wide latitude in calendar management, and we will not micromanage their scheduling decisions any more than when we review such decisions by district judges." *Morgan v. Gonzales*, 445 F.3d 549, 551 (2d Cir. 2006). "An IJ would, however, abuse his discretion in denying a continuance if (1) his decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2) his decision--though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be located within the range of permissible decisions." *Id*. at 551–52 (internal quotation marks and alterations omitted).

Here, after several adjournments resulting in removal proceedings that lasted over two years, the IJ denied Singh's continuance request on May 16, 2005. Singh admitted before the IJ that he had used a false name and discarded his passport before his 1992 arrival, thereby complicating any search by the government for any documentation reflecting that event. It is unclear from the record whether Singh even remembered what false name he might have provided to immigration officials in 1992. Moreover, Singh admitted that he discarded whatever paperwork he received from immigration officials upon his arrival in 1992. Based upon Singh's

testimony, the IJ concluded that it failed to show that he had been "admitted in any status," as required by statute to be eligible for cancellation of removal. Given the circumstances of Singh's 1992 arrival and the extent to which Singh's removal proceedings had already been prolonged, we cannot conclude that the IJ exceeded his allowable discretion in denying Singh's continuance request to gather more evidence. *See id*. at 553. Accordingly, we deny this portion of Singh's petition for review.

## **CONCLUSION**

For the foregoing reasons, we DISMISS in part and DENY in part the petition for review.

14